## COMMONWEALTH *vs.* LARRY BREWSTER.

No. 97-P-1853.

Middlesex. October 21, 1998. - May 13, 1999.

Present: ARMSTRONG, KASS, & BECK, JJ.

*Evidence,* Nonexistence of evidence, Identification. *Witness,* Competency. *Identification. Practice, Criminal,* Instructions to jury.

At the trial of a criminal case, the judge properly limited defense counsel's inquiry of a witness, who was not competent to testify to the particular facts that defense counsel sought to elicit. [748-749]

At a criminal trial in which the defendant attempted to demonstrate, as part of his defense, that the police had failed to save a tape recording of a 911 call that a judge had ordered be preserved, the defendant was not, in addition, required to establish that the tape was exculpatory. [749]

In the circumstances of a criminal case, the judge's omission of a sentence and a phrase, which were not of the essence, from her instruction to the jury on identification evidence, following the instruction set forth in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979), did not create a substantial risk of a miscarriage of justice. [749-751]

At a criminal trial, the judge's instruction to the jury on their consideration whether the witness may have made an honest but mistaken identification was adequate and did not diminish the force of the defense argument regarding good faith mistake. [751]

INDICTMENTS found and returned in the Superior Court Department on March 22, 1995.

The cases were tried before *Elizabeth J. Dolan,* J.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Barbara F. Berenson,* Assistant District Attorney, for the Commonwealth.

KASS, J. Larry Brewster was found guilty by a jury of armed robbery (G. L. c. 265, § 17) and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A[*b*]). There are

three points on appeal. The first is a *Bowden*[1] issue, namely, that the trial judge mistakenly excluded evidence of failure by the Commonwealth to preserve the tape on which the Somerville police recorded the victim's 911 telephone call. The second point argues a material omission from the standard *Rodriguez*[2] jury instruction on the subject of identification testimony, and the third point was that the judge inadequately instructed the jury that the sole identifying witness, the victim, might have been honestly mistaken in her identification. See *Commonwealth v. Pressley*, 390 Mass. 617, 620 (1983).

We recite the pertinent facts the jury might have found, taking the evidence in the light most favorable to the Commonwealth. At about 9:45 A.M. on February 23, 1995, a man entered Sally's Beauty Supply at 416 McGrath Highway, Somerville, and asked the store manager, Illia Reyes, for a hair product called "Just for Me." Reyes was working alone. She showed the item to the apparent customer who said, "[T]hat's all I need." Reyes went to the cash register to ring up the sale, at which point the man grabbed her by the arm, put a knife to her throat and demanded "the money." Reyes opened the cash register and the robber scooped up all the cash there was, about $100. He then asked, "Where's the rest?" Reyes said there was no more — she had made a deposit in the bank that morning — and opened the safe for the robber to show it was empty. As soon as the robber left, Reyes called her district manager and, on her instruction, called the police by dialing 911. She reported the robbery and gave her location.

Police arrived at Sally's Beauty Supply within two minutes. Reyes described her assailant to the police officers as a six-foot tall, dark-skinned black man in his late thirties. She described his clothes: a denim jacket, purple sweats, and black dress shoes. He had rough-textured hair pulled back in a short pony tail and sported a goatee. His eyes were distinctive, slightly slanted. Reyes described the robber as "built," i.e., a large framed man. William Donovan, a Somerville police detective who arrived on the crime scene ten minutes later, made notes that Reyes described the robber as a thirty year old light-skinned black male, approximately five feet, eight inches tall. On the day of the robbery, Reyes examined an array of several hundred

[1]*Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980).

[2]*Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), as modified in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640-641 (1993).

photographs the police furnished to her and identified none as her assailant. There was no picture of the defendant in that array. Seven days later, on March 2, 1995, the police showed her an array of eight photographs, from which Reyes identified a picture of the defendant as the robber. On August 29, 1995, at a pretrial hearing, Reyes identified the defendant, who was presented to her standing alone at the side of the courtroom. She identified him again at the trial.

The defense was that Reyes was honestly mistaken in her identification; the government had the wrong man. In furtherance of that theory, the defense probed inconsistencies in descriptions (e.g., as to height, darkness of skin, age) of the robber that Reyes had given and offered alibi evidence.

1. *The missing tape.* On March 15, 1995, nineteen days after the robbery, a District Court judge had allowed a defense motion to preserve the tape recording that the police commonly make of incoming 911 calls and the responses to them. The police failed to save the tape, and defense counsel sought to highlight that fact before the jury while cross-examining Detective Donovan. That cross-examination brought out that Donovan did not know much more about the 911 system than that it existed. The 911 system was another department. Indeed, when asked to explain what a "turret tape" is, Donovan answered, "I don't know what you mean." Repeatedly he said, "I'm not familiar with the system."

The judge wanted to know, "Why are we dealing with this at trial through this witness and before a jury?" Defense counsel explained that she wished to show the police had wiped out the tape on the ground that the jury are entitled to know that the police had failed "to produce certain evidence" and that such a failure could be a building block in a defense. *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980). After a colloquy during which the judge inquired whether the defense was prepared to offer any evidence that the tape might disclose an exculpatory timing factor or a description by Reyes (she had testified that she did not give a description of the robber to the police telephone operator), the judge excluded continuation of a line of inquiry about the missing tape.

What informs the decision in *Commonwealth* v. *Bowden, supra,* is the idea that the failure of the police to follow certain methods or procedures may raise reasonable doubt in the minds of jurors about the defendant's guilt. *Id.* at 486. As we observed

in *Commonwealth* v. *Flanagan*, 20 Mass. App. Ct. 472, 475-477 (1985), the relevance lies in the reason why a prescribed procedure (here the court order to preserve the tape) was not followed. *Id.* at 475-476. If the reason was sloppiness, that might cast doubt on other evidence offered by the prosecution. *Ibid.*

It is a fundamental difficulty in the attempt of defense trial counsel to interrogate Detective Donovan about the missing tape that Donovan did not know that the tape was missing, that an order existed for its preservation, why it was missing, or how the taping system for 911 calls worked. He was in a patrol car when the telephone call from Reyes came into police headquarters. Donovan turned out to be the wrong witness to interrogate about this subject in front of the jury, and the line of inquiry was properly excluded for that reason alone. See *Commonwealth* v. *Roselli*, 335 Mass. 38, 39-40 (1956). Contrast *Commonwealth* v. *Benoit*, 410 Mass. 506, 520 (1991). Whether a witness is competent to testify to a particular fact lies within the sound discretion of the trial judge. *Ibid.* See *Commonwealth* v. *Gamache*, 35 Mass. App. Ct. 805, 806-807 (1994).

In considering the defense line of inquiry based on the missing tape, the judge also reflected on the failure of defense counsel to offer a reasonable hypothesis, based on evidence, that the tape might have contained something of help to the defendant. See *Commonwealth* v. *Waters*, 420 Mass. 276, 279 (1995), to which the judge referred in colloquy with counsel. The *Waters* case, however, dealt with a motion to dismiss the indictments because of lost police tapes. So serious a step as dismissing an indictment required assessing the culpability of the government in relation to "the materiality of the lost evidence, and the potential prejudice to the defendant." *Ibid.* In the instant case, the defense had a lesser objective, that of demonstrating that on at least one aspect of the case the police had stumbled. For that limited purpose, it was sufficient (through a competent witness) to show that the tape had been lost. It was not necessary for that purpose to establish as well that the missing tape was likely to have been exculpatory. See *Commonwealth* v. *Cameron*, 25 Mass. App. Ct. 538, 543-549 (1988).

2. *Claims of error in jury instructions about identification.* (*a*) *Omission of two paragraphs from pattern charge on identification.* In instructing the jury about how to weigh identification evidence, the judge followed, subject to two eli-

sions, the pattern instruction appended to the opinion in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979).[3] The transcript reflects that the judge omitted a clause from the eighth paragraph of the *Rodriguez* instruction, which we identify by setting out the text of that paragraph and emphasizing by italics the omitted material:

> "If the identification by the witness may have been influenced by the circumstance under which the defendant was presented to him for identification, *you should scrutinize the identification with great care.* You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification."

The judge omitted entirely the ninth paragraph of the *Rodriguez* charge, which reads:

> "You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness."

Those two omissions are now the basis of claims of error on appeal. At trial, defense counsel made no objection about the omissions and, if there was error, we consider it only if the error presents a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *McMaster*, 21 Mass. App. Ct. 722, 726-727 (1986). As to the phrase "you should scrutinize the identification with great care," its omission hardly invites the jury to be careless. Taken as a whole, the *Rodriguez* instruction constitutes a lecture on the elements and subtlety involved in percipient identification and that the jury must be persuaded about the accuracy of the identification beyond a reasonable doubt. The omitted clause is a desirable grace note but is not of the essence. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 558 (1998); *Commonwealth* v. *McMaster*, 21 Mass. App. Ct. at 727; *Com-*

---

[3]That pattern instruction was amended in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640-641 (1993).

*monwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994) (ritualistic adherence to text of *Rodriguez* not required).

The omission of the instruction that identification from a group is preferable to a one-on-one identification is more troublesome, particularly in the light of *Commonwealth* v. *Hallet*, 427 Mass. at 556-558. The trial judge in that case had omitted the same material from the pattern charge, there was no preserved objection, and the court concluded the omission ran a substantial risk of a miscarriage of justice. In *Hallet*, however, there was a one-on-one show-up identification on the day of the robbery and in circumstances suggestive to the victim-witness that Hallet was the robber. *Id.* at 558. By contrast, in the case before us, the primary identification was from a photo array, thus, from a group rather than by presentation of the defendant alone to the witness. That was the identification that counted in the prosecution's case; the only identification that was mentioned in the prosecutor's closing argument. Reyes's identification of the defendant at a pretrial hearing and at trial was confirmatory of what Reyes had already said. In these circumstances, we do not think the judge's omission created a substantial risk of a miscarriage of justice.

(*b*) *Omission from requested instruction.* Defense counsel requested that the judge, in accordance with *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983), instruct the jury that Reyes might have made an honest but mistaken identification. The trial judge charged the jury that they were "entitled to consider whether or not the witness made a good faith mistake when you consider whether the prosecution has proven beyond a reasonable doubt the identity of the defendant as the perpetrator." That language adequately expresses the substance of the idea that the *Pressley* opinion requires judges to convey to the jury. See *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. at 904. Defense counsel had made a forceful closing argument on the point, and the judge's charge did not diminish the force of that argument.[4]

*Judgments affirmed.*

---

[4]Although we have reiterated in this opinion what has been said in previous cases, that adherence to *Rodriguez*, *Cuffie*, and *Pressley* need not be slavish, departures from the accepted texts breed appeals. There is nothing iniquitous about adhering to the pattern texts suggested in the opinions.