## Commonwealth *vs.* Sandro J. Monteiro.

No. 99-P-1560.

Plymouth. March 12, 2001. - May 11, 2001.

Present: Brown, Jacobs, Laurence, Duffly, & Doerfer, JJ.

*Practice, Criminal,* Instructions to jury. *Evidence,* Identification. *Identification. Error, Harmless.*

In the circumstances, a judge's failure, at the trial of an indictment charging distribution of cocaine, to instruct the jury on certain crucial points relating to eyewitness identification testimony in conformity with *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979), as modified by *Commonwealth* v. *Cuffie,* 414 Mass. 632 (1993), constituted reversible error. [557-562]

Indictment found and returned in the Superior Court Department on April 7, 1997.

The case was tried before *Wendie I. Gershengorn,* J.

*Michael H. O'Connell,* Assistant District Attorney, for the Commonwealth.

*David P. Sorrenti* for the defendant.

Doerfer, J. After a jury trial in the Superior Court, the defendant was convicted under G. L. c. 94C, § 32A(*c*), of distribution of cocaine to an undercover police officer in a street transaction in Brockton. We hold that the trial judge erred in failing to instruct the jury on certain crucial points relating to eyewitness identification testimony in conformity with *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979), as modified by *Commonwealth* v. *Cuffie,* 414 Mass. 632, 640-641 (1993), and that the error was not harmless.

*The evidence relating to identification.* The primary issue for the jury to consider was the identification of the defendant as the seller of the drugs. At trial the only eyewitness who identified the defendant as the seller of drugs was the undercover officer to whom the drugs were sold, State police Trooper Collazo.

51 Mass. App. Ct. 552 (2001) 553

Commonwealth *v*. Monteiro.

He testified about the relevant events and circumstances as follows.

On the night of January 27, 1997, he was conducting an undercover investigation of street level narcotic sales in the city of Brockton. At approximately 10:25 P.M. he indicated to a person on the street (one Mangrum) an interest in purchasing drugs. He then followed Mangrum by car to 56 Turner Street. Two males were standing on the porch of the house at that address. Mangrum went upstairs to the porch and spoke to them while Collazo remained in his car on the street.

One of the males approached Collazo's car, removed a small bag of crack cocaine from his mouth, and sold it to Collazo in exchange for a marked twenty dollar bill. Collazo spoke only briefly with this individual. On cross-examination, he agreed that the incident was a "real quick exchange." Collazo then immediately left the area and gave a signal to his backup officers. Collazo agreed that "this [was] an area that's had shootings in it" and was a "pretty tough area in Brockton." He was in a hurry to leave the scene to avoid trouble and detection. He was not sure whether his backup units could see him in case he got in trouble, although they were nearby and in radio contact.

As Collazo was leaving he broadcast a description of the seller. He did not describe the seller's height, weight, or facial features. He did not testify whether he observed or was able to observe the defendant's face.

Brockton police Detective Joseph Sutherland testified that he heard Collazo's broadcast, which described the seller as a dark-skinned male or black male, wearing a multi-colored jacket, red, white and blue, dark pants, and a black sweatshirt. Upon receiving Collazo's signal, Sutherland drove onto Turner Street where he saw three males, two of whom began to run. Sutherland apprehended and arrested Mangrum, who had not fled.

Brockton Detective Smith testified that, after hearing a radio broadcast describing a dark-skinned male wearing a multi-colored jacket and dark pants, he and Brockton Detective Leeburg positioned themselves at a parking lot on North Warren Avenue, approximately two blocks from Turner Street. Smith then observed the defendant, Sandro Monteiro, run into the

parking lot. Once the defendant observed Smith, he stopped and was subsequently arrested. No marked money or contraband was found in his possession at the time of the arrest.

While the defendant was in custody in the parking lot on North Warren Avenue, Collazo drove past but did not stop or approach the defendant. The only person in the group who was not a police officer was the defendant. Collazo used his radio and indicated that the person in custody was the seller of the drugs. He did not testify at trial that he observed the facial features of the person in custody.

In the years between 1993 and 1997 Collazo had made an average of two to three drug arrests per night based on sales of drugs to him as an undercover police officer. On some occasions he made as many as twelve arrests in an evening. In those four years he made thousands of such arrests. Collazo did not make a written report of the events of the night in question. Detective Sutherland wrote a report that Collazo read to prepare for his testimony at trial.

The defendant testified in his own defense as follows. He denied selling drugs to Collazo. He said he was visiting that evening with a friend at 56 Turner Street whose room was in the basement. At approximately 10:30 P.M. the friend led him from the basement room to a side door, let him out of the door leading onto some steps which went into the driveway of the building, and locked the door. As he was on the last step leading to the driveway the defendant observed a "young kid" run toward the end of the driveway yelling "run." The defendant testified that he knew the area was prone to shootings and drug dealing. He began to run through the back yard toward North Warren Avenue as a result of the shouted warning. Once he saw the police officer he stopped running and approached the officer.

The evidence on identification thus was (1) the direct evidence given by Collazo, who identified the defendant in court as the seller; (2) the drive-by identification by Collazo of the defendant as he was being held under arrest at the parking lot; and (3) the comparison between Collazo's broadcast

identification of the defendant as a dark-skinned male or black male and the general appearance of the defendant in court.[1]

The defendant admitted running from 56 Turner Street to the parking lot.[2] Thus there was no issue presented whether the person arrested was someone who ran from 56 Turner Street.

*The judge's charge to the jury on identification.* At the close of the evidence the judge conferred with counsel on the charge. The evidence had been completed more quickly than counsel for the defendant had anticipated,[3] and she did not have written requests for the judge. She did say what she wanted in the charge was "the instruction given on identification . . . that the jury be instructed that the witness could have made an honest mistaken identification." The judge told defense counsel that she intended to give the standard District Court instruction on eyewitness identification, see note 6 *infra*, "with the addition that it could be an honest mistake."

In final argument both counsel focused on the identification issue as the principal issue for decision. Defense counsel emphasized the short time period and limited opportunities that Collazo had to observe the seller at the time of sale. She noted that he did not describe the seller's facial features, especially whether the seller had facial hair. (The defendant at the time of arrest had a beard.) She commented on the brevity and suggestiveness of the drive-by identification and argued that Collazo never observed the face of the defendant while he was under arrest. The Commonwealth suggested that there was adequate lighting at the scene of the sale and that the jury could infer that Collazo observed the facial features of the defendant at that time.

In her charge the judge addressed the identification issue as

---

[1]In closing argument defense counsel argued that the defendant as he appeared in court before the jury was a "young light-skinned black." A picture of the defendant taken that night was in evidence and lent support to that argument.

[2]The parties agreed that evidence of flight as consciousness of guilt was not to be raised as an issue in the case.

[3]Impanelment started at noon, and the charge conference was completed by 3:35 P.M.

set forth in the margin.[4] Other portions of the judge's charge did not contain any general instructions relating to factors for the jury to consider in evaluating the testimony of any percipient witness outside the context of eyewitness identification.

On appeal, the defendant argues that the charge was flawed both in its omission of the factors to be considered in appraising identification testimony, see *Rodriguez*, 378 Mass. at 310-311, and note 6 *infra*, and in its abbreviation of the supplemental instruction on honest mistake in the Model Jury Instructions for Use in the District Court § 6.05 (1997).

*Honest mistake instruction.* The judge had agreed to supplement her instruction with "honest mistake" language, see *Commonwealth* v. *Pressley*, 390 Mass. 617, 619-620 (1983), elaborating on the possibility that eyewitness identification testimony could be based on an honest mistake as opposed to lying. The defendant contends that the judge's instruction did not adequately inform the jury that Collazo may have made an honest but mistaken identification. The relevant portion of the jury charge, set forth in the margin,[5] incorporated much of the supplemental instruction on honest mistake in the Model Jury

---

[4]"The Commonwealth has the burden of proving the identification of the perpetrator beyond a reasonable doubt. The perpetrator meaning the person who allegedly sold drugs to the police officer. It isn't essential that the witness himself be free from all doubt as to the correctness of his identification of the defendant. But you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant as the perpetrator before you convict him.

"If you are not convinced beyond a reasonable doubt that this defendant was the person who committed the crime charged, then you must find the defendant not guilty.

"Now, in deciding whether or not to credit a witness who identifies this defendant as the perpetrator of the crime charged, remember you must consider not only whether the witness is trying to tell the truth or is lying, but you must also decide whether the witness's identification is accurate or instead is an honest mistake. So what I'm saying is you have to decide whether the witness's identification is accurate in fact.

"Again, I emphasize, it's the prosecutor who has the burden of proving every element of the crime charged beyond a reasonable doubt. And that includes the identity of this defendant as the perpetrator of the crime for which he stands charged."

[5]"Now, in deciding whether or not to credit a witness who identifies this defendant as the perpetrator of the crime charged, remember you must consider not only whether the witness is trying to tell the truth or is lying, but you

Instructions for Use in the District Court § 6.05 (1997). The judge's instruction adequately conveyed the substance of the idea that the *Pressley* opinion requires. See *Commonwealth* v. *Brewster*, 46 Mass. App. Ct. 746, 751 (1999), citing *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994).

*Factors to be covered when instructing on eyewitness identification.* In *Rodriguez, supra,* and its progeny the court established the factors which are relevant to an evaluation by the jury of eyewitness identification testimony and directed that such factors be explained to the jury where eyewitness identification is an issue raised by the evidence.[6] The charge given by the judge here did not adequately inform the jury of

---

must also decide whether the witness's identification is accurate or instead is an honest mistake. So what I'm saying is you have to decide whether the witness's identification is accurate in fact."

[6]The relevant portions of instructions which incorporate the teachings of *Rodriguez* are found in standard instructions issued by the Administrative Office of the District Court Department:

"Identification testimony is an expression of belief or impression by a witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"Are you convinced that the witness had the capacity, and an adequate opportunity, to observe the offender? Whether a witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good lighting conditions were, and whether the witness had occasion to see or know the person in the past. In general, witnesses base any identification they make on their perception through the use of their senses. Usually witnesses identify an offender by the sense of sight — but this is not necessarily so, and witnesses may use their other senses.

"Are you satisfied that any identifications made by witnesses after the crime were the products of their own recollection?

"Here, you should examine all the circumstances under which the identification was made. If a witness's identification may have been influenced by the circumstances under which the defendant was presented to the witness for identification, you should scrutinize the identification with great care.

"Another factor that you may consider in determining the reliability of any identification is the length of time that lapsed between the occurrence of the crime and the opportunity of a witness, some time after the occurrence of the crime, to see and identify the defendant as the offender.

"You may also take into account that any identification that was made by picking the defendant out of a group of similar individuals is generally more

the factors they should consider, given the evidence of the circumstances under which Collazo claimed to be able to identify the defendant as the person who sold him the drugs.

1. The judge did not mention that the jury should consider whether the witness had an adequate opportunity to observe the offender at the time of the offense. She did not point out that the adequacy of the opportunity to observe would be affected by such factors as how long or short a time was available; how far or close the witness was; how good the lighting conditions were and whether the witness had had an occasion to know the person in the past. Here Collazo had but a brief opportunity to observe the seller of the drugs. The parties disputed the lighting conditions. There was no direct evidence that Collazo observed the seller's face. Collazo was in a hurry and concerned about concealing his identity and the possibility of trouble. These factors were extremely relevant and the jury should have had the benefit of instructions on the subject.

2. The judge did not instruct the jury on issues relating to a subsequent identification by an eyewitness: that they should consider whether the identification made by the witness was a product of his own recollection or whether he was influenced by the circumstances under which the defendant was presented to him for identification. Here Collazo did not get out of his vehicle or even stop as he rolled by to identify the arrested person as the seller. The record did not show that this was a careful subsequent identification but suggested rather that it was quite cursory.

3. The judge should have told the jury that identification made by picking out a defendant from a group of similar

reliable than one which results from the presentation of the defendant alone to a witness.

"You may take into account whether a witness ever tried and failed to make an identification of the defendant, or made an identification that was inconsistent with the identification that such witness made at trial.

"You must consider the credibility of each identification witness in the same way as any other witness. Consider whether he or she is truthful, and consider whether he or she had the ability and opportunity to make a reliable observation on the matter covered in his or her testimony." Model Jury Instructions for Use in the District Court § 6.05 (1997). See *Commonwealth v. Rodriguez,* 378 Mass. at 310-311; *Commonwealth v. Cuffie,* 414 Mass. at 640-641; *Commonwealth v. Santoli,* 424 Mass. 837, 845 (1997).

individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. Here the defendant was in custody when identified by Collazo.

Given all the circumstances mentioned above, the judge should have told the jury that they should scrutinize the identification with great care and that identification testimony is an expression of belief or impression by a witness.

We note that "strict adherence to the instruction suggested in the *Rodriguez* opinion is not required." *Commonwealth* v. *Hallet*, 427 Mass. 552, 558 (1998), citing *Commonwealth* v. *Conceicao*, 388 Mass. 255, 265 (1983). Indeed, a judge may adapt a jury charge to conform appropriately to the evidence at hand.[7] *Commonwealth* v. *Hallet, supra* at 558. In this instance, however, "[t]he judge's instruction failed to bring to the jury's attention [too many] considerations that . . . are important to the weighing of identification testimony and are not irrelevant on the evidence in this case." *Ibid.*

*Adequacy of objection to charge.* At the conclusion of the charge the defendant's counsel objected to the charge on eyewitness identification stating, "There is more language that could have been used. So I would ask the court to give a more extensive instruction on identification." The trial judge refused. The Commonwealth argues that the defendant's counsel did not adequately bring to the judge's attention her particular objection to the judge's charge and thus did not preserve her rights to argue that the judge's charge was error. We disagree.

Pursuant to Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), a party must specify "the matter to which he objects and the grounds of his objection." "The purpose of this requirement . . . is to bring alleged errors or omissions to the attention of the judge at a time when they still can be corrected . . . ." *Commonwealth* v. *Keevan*, 400 Mass. 557, 563 (1987). Here, defense counsel specifically objected to the identification instruction, noting that it was missing language. Viewed in the abstract, it would have been preferable for defense counsel to

---

[7]Thus, contrary to the defendant's contention, we do not find that the judge erred by failing to read verbatim from suggested standard instructions prepared by the staffs of the District or Superior Courts to assist judges in charging juries on this issue.

draw the judge's attention to the precise words and sections which had been omitted or to have mentioned *Commonwealth v. Rodriguez*. In the context of this case, however, the objection was adequate to alert the judge to the existence and nature of the substantive problem because she had stated in the charge conference that she would give the entire District Court model instruction on eyewitness identification. When defense counsel stated that she wanted "more" language given, she reasonably alerted the judge to the fact that the judge had omitted substantial portions of the charge that she said she would give. Thus, we conclude that the defendant has substantially complied with rule 24(b) and that the defendant's objection was properly preserved. We review the omissions in the identification instruction for harmless error. Compare *Commonwealth v. Kelly*, 417 Mass. 266, 270 n.6 (1994).

*Harmless error.* The error in the judge's failure to provide the jury with relevant portions of the *Rodriguez* charge would be harmless only if we could be "sure that the error did not influence the jury, or had but very slight effect . . . ." *Commonwealth v. Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth v. Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). The critical issue at trial was whether the defendant was properly identified. This question firmly rested on the eyewitness identification testimony of Collazo. It is on this evidence that the omitted portions of the *Rodriguez* charge were particularly relevant. The practical criteria set forth in *Rodriguez* are important considerations that guide a jury's evaluation of eyewitness identification evidence. Where, as here, the "heart of the *Rodriguez* charge, a forceful warning that misidentification . . . may come about through innocent human mistake (occasioned by any of a number of factors)," *Commonwealth v. Delrio*, 22 Mass. App. Ct. 712, 720 (1986), is left out, we cannot be confident that the jury were not influenced by the error.

Here, although the jury could have based their decision in part on the evidence from Collazo that the seller was wearing a multi-colored jacket as was the defendant when arrested, it is most likely that Collazo's eyewitness identification was a major factor in persuading the jury of the defendant's guilt. It is

plausible to infer that their evaluation of his testimony might have been more searching if they had been given proper instructions on eyewitness identification. Yet, "[i]t is not for us to speculate on whether the errors in the charge did not taint the jury's guilty verdict. There is no way to know. . . . This is not a case in which an error was unrelated to a contested issue at trial. The errors in the identification instruction in fact concerned the only contested issue at trial." *Commonwealth* v. *Hallet*, 427 Mass. at 558-559.

The Commonwealth asserts that any error in the jury instructions is harmless because (1) the case against the defendant is particularly strong; and (2) the defendant's story is implausible. We disagree with the Commonwealth's view of the evidence.

This is not a case where "evidence of guilt [was] strong and one-sided." *Commonwealth* v. *Amirault*, 424 Mass. 618, 650 (1997), quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). Here the evidence of guilt was strongly dependent on the eyewitness identification by Collazo. There was no corroboration of the defendant's guilt by his possession of the marked money or of drugs. We are not persuaded that Collazo's testimony or any other evidence in the case was so overwhelming that we can say with fair assurance that the judgment would not have been substantially swayed by a proper instruction.

Similarly, we are not convinced that the defendant's story was so implausible as to alleviate the need for a proper instruction. The defendant denied being the individual who sold Collazo drugs, but admitted to being in the area. He testified that he was leaving 56 Turner Street when he saw an individual run past yelling "run," and that, fearing for his safety, he ran too. Collazo agreed that this was a high crime area. There was no evidence, aside from Collazo's testimony and the defendant's multi-colored jacket, which tended to contradict the defendant's story of the events. Nor was there any physical evidence, such as drugs or marked money, linking the defendant to the crime.

In any event, the Commonwealth's reliance on the supposed weakness of the defendant's explanation underscores the prejudice in failing to give a proper identification charge. The judge's identification instructions inappropriately focused on the

issue of credibility. Although the charge touched on the thrust of *Rodriguez* by instructing the jury to consider the possibility of an honest mistake, it did not equip the jury with the proper tools to help them recognize the circumstances that might lead a witness to make such a mistake. Compare *Commonwealth* v. *Pressley*, 390 Mass. at 619-620. As a result, the jury may well have concentrated more on whom to believe rather than on evaluating the identification testimony. The jury quite likely concluded that Collazo did not tell a deliberate falsehood. Yet, had the *Rodriguez* instruction been given in full, the jury might have been more inclined, after considering the factors outlined therein, to conclude that Collazo's identification was inaccurate.

In light of the foregoing, we cannot be certain that the error did not contribute to the verdict or that including the omitted portions of the *Rodriguez* instruction would not have substantially influenced the jury.

*Judgment reversed.*
*Verdict set aside.*