## COMMONWEALTH vs. AARON WILLIAMS.

No. 00-P-605.

Suffolk. September 14, 2001. - March 19, 2002.

Present: LENK, KAPLAN, & KAFKER, JJ.

*Identification. Practice, Criminal,* Instructions to jury. *Evidence,* Identification. *Controlled Substances.*

At a trial resulting in a conviction of distribution of crack cocaine and of doing so in a school zone, the judge erred in refusing to provide identification instructions to the jury, including one of honest but mistaken identification, and the failure to provide those instructions warranted a new trial where, given that there was but one eyewitness to the crime, no corroborating evidence, and contrary defense testimony, it could not be concluded that the outcome of the trial would have been the same had the jury been sufficiently instructed on identification. [239-244]

Evidence at a criminal trial was insufficient to prove beyond a reasonable doubt that the defendant committed a drug offense within 1,000 feet of a school, and the judge erred in denying the defendant's motion that a required verdict of not guilty enter as to the offense, where evidence that the defendant's arrest had occurred 680 feet from the school and that the arresting officer had patrolled "the same area" on the night of the arrest, just as he had eighteen days earlier when the drug transaction took place, was not evidence permitting a reasonable inference that the place of arrest and place of drug sale were within 320 feet of each other. [244-247]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on December 1, 1998.

The case was tried before *Edward R. Redd,* J.

*Charles F. Willson* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

LENK, J. After trial by jury, the defendant Aaron Williams was convicted on charges of distributing crack cocaine and of doing so in a school zone. On appeal, the defendant presents four claims: (1) the trial judge erred by refusing to provide jury instructions on identification, including the possibility of "hon-

est but mistaken" identification; (2) the judge erred by failing to explain the intent element of the distribution offense; (3) the judge improperly used the sentence to punish the defendant for exercising his constitutional rights to testify and stand for a trial by jury; and (4) the Commonwealth failed to produce sufficient evidence that the alleged crime occurred within a school zone.

*Background. A. Evidence.*[1] The Commonwealth's case against the defendant consisted chiefly of the testimony of Boston police Officer Kenneth Hearns.[2] While working in plain clothes on the evening of November 12, 1998, Hearns responded to a report of drug activity around 35-39 Mount Pleasant Avenue in the Roxbury section of Boston. There, the officer observed an adult male, whom he had never seen before, leave a building at 39 Mount Pleasant Avenue. He described the individual, whom he identified as the defendant, as having "unique feminine characteristics" and wearing a white T-shirt, a short brown leather coat, and large loop earrings. Stationed in an undercover vehicle, Hearns testified that he observed the defendant, with only occasional interruptions, for sixty to ninety minutes, and from as close as ten to fifteen feet.

Hearns eventually ventured out of his car to conduct a field investigation observation (FIO), which would involve interviewing and identifying the defendant. He approached the defendant in a dead-end alley off Mount Pleasant Avenue, a locale known to the officer as a site for drug deals. The defendant called out to Hearns, "Hey boo! Hey boo! . . . They're not down there anymore, the cops shot them down."[3] He also stated, "I have the flavor." Instead of conducting an FIO as planned, Hearns

[1]The transcription of the tape recorded trial proceedings indicate that significant portions of those proceedings are either missing or inaudible. For example, there is no transcription of the prosecution's direct examination of its only witness and much of the cross-examination is similarly missing; many sidebar discussions are also unavailable. The record was reconstructed through the affidavits of trial counsel and pursuant to Mass.R.A.P. 8, as amended, 378 Mass. 932 (1979).

[2]The Commonwealth also introduced as exhibits a plastic bag containing crack cocaine and a drug analysis from a State laboratory.

[3]This testimony is taken from the affidavit filed by the defendant's trial counsel. See note 1, *supra*. The prosecutor's version of this testimony is different in that the defendant is reported to have said, "the cops *shut* them down" (emphasis in original).

remained undercover to purchase drugs. Using recorded police department money, Hearns purchased individually wrapped rocks from the defendant, who retrieved the rocks from inside his mouth. Tests later established that the rocks were crack cocaine. The two parted ways once the deal was completed. Soon thereafter, Hearns fled the area when he confronted a female who identified him as a police officer.

The next day, Hearns left on a nine-day vacation. On November 30, about a week after returning to work, Hearns was patrolling the same area where, eighteen days earlier, he had initially encountered the defendant. Citing the gold loop earrings and the "unique feminine characteristics," Hearns testified that he recognized the defendant as the same person who had sold him drugs on November 12. When the pair made eye-to-eye contact, the defendant turned around as if to walk away from the officer, but he ultimately turned back, walking past the officer with his head down. Hearns arrested the defendant, who, in addition to the aforementioned features, exhibited bad skin, short-cropped hair, and a black leather coat. When asked to verify his identification of the defendant, Hearns testified, "I know him when I see him."

The defense was misidentification. Testifying on his own behalf, the defendant denied selling drugs to Hearns on the night in question. The defendant never visited Mount Pleasant Avenue before November 30, let alone on November 12. Though he could not recall specifically where he was on the evening of November 12, he thought perhaps that he had been at a movie. Regardless, "I know for a fact that I was nowhere on Mount Pleasant and Vine Street around ten thirty or ten o'clock that night." The defendant has pierced ears, but testified that he does not own a brown coat. He also disputed Hearns's characterization of his behavior on November 30: as he never made eye contact with the officer until he was accosted from behind and arrested, he never attempted to walk away or to cloak his face.

B. *Closing arguments.* Counsel for both parties addressed the issue of identification in their final arguments. Defense counsel argued that, while Hearns might be sincere in his belief that the defendant sold him drugs on November 12, he nonetheless was

mistaken. To buttress this theory, counsel outlined a few factors for the jury to use in considering the accuracy of the identification. The prosecutor defended the identification as credible, noting the officer's substantial opportunity to observe the defendant, his field experience, the confidence of his assertion, and the defendant's distinguishing characteristics, most notably the earrings. During her final argument, the prosecutor stated, "Officer Hearns properly identified this Defendant as the man who sold him undercover drugs on November 12th."

C. *Jury instructions.* At the close of the evidence, the defendant submitted a proposed jury instruction on the topic of identification, which was adapted from a law review article but which contained citations to *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979), and *Commonwealth* v. *Pressley,* 390 Mass. 617 (1983). The proposal asked in part that

> "the court not give the standard *Telfaire* instruction which in Massachusetts is found in *Rodriquez* [*sic*] (and as modified by *Commonwealth* v. *Fitzpatrick*). Instead, the defendant requests the following instruction, in light of the growing number of courts disparaging the said *Telfaire* instruction."

(internal citations omitted). The judge denied this request and refused to instruct on the issue. The defendant objected to the denial of his request for jury instruction. The judge did not thereafter instruct on identification, though he did instruct on witness credibility, appearing to track the main paragraph of the relevant model. See Model Jury Instructions for Use in the District Court, Instruction 2.07 (1995).

*Discussion. A. Identification instruction.* The defendant claims that the judge erred in refusing to provide identification instructions, including one on honest mistake. We agree.

The cases make plain that judges should furnish jurors with a set of practical criteria by which they can assess the quality of an asserted identification and, where justified, that judges should alert jurors to the possibility of an honest but mistaken identification. See *Commonwealth* v. *Rodriguez,* 378 Mass. at 302; *Commonwealth* v. *Pressley,* 390 Mass. at 619-620; *Commonwealth* v. *Cuffie,* 414 Mass. 632, 639-641 (1993); *Com-*

monwealth ·v. *Jones*, 423 Mass. 99, 110-111 (1996); *Commonwealth* v. *Santoli*, 424 Mass. 837, 845-846 (1997); *Commonwealth* v. *Rosado*, 428 Mass. 76, 78-79 (1998); *Commonwealth* v. *Odware*, 429 Mass. 231, 237 (1999); *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. 106, 109-110 (1984). Such criteria often emerge in the form of a general identification instruction, i.e., a *Rodriguez* charge, *Commonwealth* v. *Rodriguez*, 378 Mass. at 310-311,[4] and an honest but mistaken, or *Pressley*, instruction. *Commonwealth* v. *Pressley*, 390 Mass. at 619-620. A modified *Rodriguez* instruction should be delivered whenever identification is an issue raised by the evidence. See *Commonwealth* v. *Monteiro*, 51 Mass. App. Ct. 552, 557 (2001). See also *Commonwealth* v. *Murray*, 396 Mass. 702, 709 (1986); *Commonwealth* v. *Jones*, 423 Mass. at 110. A *Pressley* instruction is warranted "when the facts permit it and when the defendant requests it." *Commonwealth* v. *Pressley*, 390 Mass. at 620. In deciding whether the judge should have provided the requested identification charges, we assume the version of the facts most favorable to the defendant. See *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. 33, 38 (1998).

The single contested issue at trial was whether the defendant was the person who sold crack cocaine to Hearns on November 12, 1998. The only evidence linking the defendant to this nighttime drug sale, occurring eighteen days before his arrest, is the eyewitness testimony of one police officer previously unfamiliar with the defendant.[5] This identification was countered by the defendant's testimony. The record before us amply supports

---

[4]Strictly speaking, a *Rodriguez* instruction is a misnomer. The precise language outlined in the appendix to *Commonwealth* v. *Rodriguez*, 378 Mass. at 310-311, which hailed from *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972), has since been modified by case law. See *Commonwealth* v. *Cuffie*, 414 Mass. at 639-641; *Commonwealth* v. *Santoli*, 424 Mass. at 845-846; *Commonwealth* v. *Fitzpatrick*, 18 Mass. App. Ct. at 109-110. See Model Jury Instructions for Use in the District Court, Instruction 6.05 (1997).

[5]We need not address whether the prosecutor's comment that the officer "*properly* identified this Defendant," to which the defendant did not object at trial, constituted impermissible vouching of worrisome magnitude in order to conclude that it underscored the need for identification instructions. See *Commonwealth* v. *Delrio*, 22 Mass. App. Ct. 712, 720 (1986).

identification instructions, including a *Pressley* charge.[6] See *Commonwealth* v. *Murray*, 396 Mass. at 709; *Commonwealth* v. *Odware*, 429 Mass. at 237; *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. at 39; *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727, 731 (2000).

The Commonwealth nonetheless argues that the judge acted properly in declining to give *Rodriguez* and *Pressley* instructions. It suggests, first, that the defendant failed specifically to request such instructions upon the rejection of his allegedly flawed written proposal. Second, the Commonwealth argues that, since the defendant did not object to the judge's failure to deliver the model instructions sua sponte, this, when viewed in the context of the defendant's prior written request that the court not give the *Rodriguez* and *Pressley* instructions, must mean that the defendant preferred that no identification instruction be given at all. We think these arguments unpersuasive.

Once he presented his proposal for jury instructions on identification and objected to the judge's refusal to instruct on the issue, the defendant fully discharged his burden to raise the issue and was entitled to receive applicable identification

---

[6]In certain circumstances, a *Pressley* instruction is not warranted, such as where "the parties are so well known to each other or so closely related that under sufficient lighting and with appropriate physical proximity, the identification by the [witness] is either true or the [witness] is lying." *Commonwealth* v. *Pressley*, *supra* at 619; *Commonwealth* v. *Stoddard*, 38 Mass. App. Ct. 45, 48 (1995) (defendant not entitled to *Pressley* instruction where victim knew him as regular customer from numerous encounters during year and one-half period); *Commonwealth* v. *Grace*, 43 Mass. App. Ct. 905, 906-907 (1997) (where no alibi defense was presented and witness observed defendant, whom he knew and recognized, with binoculars from clear unobstructed vantage point 100 feet away, judge did not err in denying defendant's request for honest but mistaken identification). Here, the officer's one-time surveillance of a suspect he had never seen before, even if for upwards of ninety minutes at close range, does not render inconceivable a good faith error. Moreover, "unique feminine characteristics," even if we were to assume this cryptic phrase to be meaningful, and loop earrings are hardly the type of physical or sartorial characteristics that make an individual unmistakable. See *Commonwealth* v. *Rosado*, 428 Mass. at 79-81 (exception to instruction did not apply, though effect of omission was nonprejudicial); *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. at 38 (witnesses to evening knife assault were previously unfamiliar with defendant before alleged encounter).

instructions.[7] See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979); *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971) (defendant is entitled to have issues of fact clearly presented to jury and law applicable thereto carefully explained); *Commonwealth* v. *Monteiro*, 51 Mass. App. Ct. at 560.[8] The judge was not required to adopt the defendant's verbiage or that of *Rodriguez* and *Pressley* so long as the gist of the applicable law was delivered.[9] See *Commonwealth* v. *Kelley*, 359 Mass. at 92; *Commonwealth* v. *Torres*, 420 Mass. 479, 484 (1995); *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994). See also *Commonwealth* v. *Brewster*, 46 Mass. App. Ct. 746, 751 n.4 (1999). The judge, however, failed to provide the instruction either in form or in substance. See *Commonwealth* v. *Rodriguez*, 378 Mass. at 301-302 (generic commentary on witness credibility was insufficient to alert jury that witness might have made good faith error in identification).[10]

That the defendant asked the judge to give a specific alternative identification instruction and that he "not give the standard *Telfaire* instruction . . . found in *Rodriguez*" did not vitiate the court's obligation to state the applicable law. Nor did the

---

[7]Because the judge failed to give any identification charge at all, we need not address the Commonwealth's extensive critique of the defendant's proposal. See *Commonwealth* v. *Rodriguez*, 378 Mass. at 301 ("None of these instructions was given, either as requested or in substance").

[8]Among the portions of trial transcript missing or inaudible is the discussion of the identification instructions. The defendant properly preserved this issue by submitting a copy of the proposed instruction, the docket entry of the judge's denial, and an affidavit from his trial counsel stating that he objected to this denial. The Commonwealth neither contested the defendant's version of the colloquy nor offered its own version.

[9]The Commonwealth argues that were the judge to give such model instructions in these circumstances, he would have acted sua sponte, which it suggests might have been in error. We think this argument is well wide of the mark. This is not a situation where a judge would have acted without defense prompting, notwithstanding the defendant's natural preference for his own language. Cases cited by the Commonwealth involve instances where the defendant did not request a *Pressley* instruction as opposed to requesting one that is allegedly flawed. See, e.g., *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 7-8 (1990); *Commonwealth* v. *Traylor*, 43 Mass. App. Ct. 239, 247 (1997).

[10]We observe that, as the judge "refused to instruct on the issue of identification," any subsequent specific defense request for a model charge would likely have been futile.

defendant's proposed instruction in any way suggest that the defendant preferred no instruction at all on the only contested issue at trial to the more standard charges. When a defendant, as here, provides his or her own articulation of jury instructions, he impliedly asks the court to forgo pattern language or other formulations. This, however, does not translate into a refusal of such alternatives should the judge decline the defendant's proposed language. Had the judge entertained any doubt as to the defense position on this point, moreover, he could easily have cleared it up by making inquiry of counsel.

Finally, the judge's failure to provide any identification instructions warrants a new trial because the error was prejudicial. An error is not prejudicial only if the Commonwealth can show "with fair assurance that the judgment was not substantially swayed by it." *Commonwealth* v. *Rosado*, 428 Mass. at 79 (internal quotation marks omitted).

Here, the evidence against the defendant cannot be plausibly characterized as overwhelming because the chief evidence of the defendant's guilt lay almost exclusively in the officer's eyewitness identification of the defendant as the person who had sold him drugs. Where, as here, the evidence of guilt was strongly dependent on an eyewitness identification not otherwise corroborated by independent evidence, and the defendant's testimony to the contrary was not patently implausible, a reversal is warranted. See *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. at 39 (reversal warranted where only other evidence, apart from identifications, was knife lacking unique identifying characteristics); *Commonwealth* v. *Monteiro*, 51 Mass. App. Ct. at 561 (reversal warranted where police officer's identification was likely strong factor, case was not particularly significant, and defendant's explanation for running away was not implausible). See also *Commonwealth* v. *Richards*, 53 Mass. App. Ct. 333, 338 (2001). Contrast *Commonwealth* v. *Rosado*, 428 Mass. at 80-81 (error harmless given short interval between observation and identification, corroborating physical evidence found on defendant, and sheer implausibility of alibi); *Commonwealth* v. *Odware*, 429 Mass. at 237 (new trial not required given overwhelming evidence against the defendant including: nine witnesses who saw defendant around time of shootings and

who identified him during police investigation; many witnesses who testified against him at trial; and defendant's statements to police). While defense counsel argued in closing that Hearns had made an honest but mistaken identification of the defendant, this does not render harmless in the circumstances the judge's failure to give any identification instruction at all. Contrast *Commonwealth* v. *Ashley*, 427 Mass. 620, 628-629 (1998); *Commonwealth* v. *Montez*, 45 Mass. App. Ct. 802, 811-812 (1998); *Commonwealth* v. *Brewster*, 46 Mass. App. Ct. 746, 751 (1999).

In these circumstances — one eyewitness, no corroborating evidence, and contrary defense testimony — we cannot be confident that the conclusion would have been the same had the jury been sufficiently instructed on identification, including the possibility of good faith but mistaken identification. The omission of any instruction on the trial's only disputed issue tended "to submerge one of the crucial issues in the case, if not to rob the defendant of his defense entirely." *Commonwealth* v. *Rodriguez*, 378 Mass. at 302. The verdict cannot stand.

In view of this, we need not dwell upon two of the remaining three assertions of error except insofar as they may arise at a new trial. First, the intent element of the distribution offense can easily be addressed at that time through use of the entire relevant model instruction or words to that effect. Second, the sentencing colloquy that the defendant challenges is virtually the same as the one we subsequently invalidated in *Commonwealth* v. *McFadden*, 49 Mass. App. Ct. 441, 442-444 (2000); it should not recur at any new trial.

Finally, while the verdict cannot stand as to either the distribution or school zone charges in view of the error in jury instructions, the sufficiency of the evidence at trial as to the school zone charge remains for our consideration. If correct that the evidence was insufficient, the defendant's right to a verdict of not guilty on the charge became fixed at the time he filed his motion at trial. See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). The defendant contends that the judge erred in denying his motion for required finding of not guilty because the Commonwealth failed to provide sufficient evidence to prove beyond a reasonable doubt that he committed a drug offense within 1,000 feet of a school. The defendant argues that all that the

Commonwealth established in this regard was a distance of 680 feet between the school and the place of his *arrest*. Because the arrest did not occur at the same location as the drug transaction eighteen days before, the defendant argues that the Commonwealth failed to establish that the *drug transaction* had occurred within 1,000 feet of a school.[11] We agree.[12]

A motion for required verdict of not guilty is allowed only if "the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass.R.Crim.P. 25(a). "The question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Perry*, 432 Mass. 214, 221 (2000) (citations omitted). The evidence may be entirely or mainly circumstantial, and permissible inferences need not be necessary, only reasonable and possible. *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998). Evidence is not sufficient where it piles inference upon inference or conjecture and speculation, or "if it tends equally to support either of two inconsistent propositions." *Ibid.*, quoting from *Commonwealth* v. *Rhoades*, 378 Mass. 810, 817 (1980).

The Commonwealth draws our attention to the affidavit of the defendant's trial counsel as it appears in the reconstructed record: "Officer Hearns testified that he used a new measurement wheel to calculate a distance of 680 feet to St. Patrick's Elementary School." The affidavit, however, contains no reference to or explanation of *what* it was that occurred 680 feet

---

[11]The defendant's related claim that the Commonwealth failed to demonstrate that the school in question met the statutory requirements is without merit. To discharge the Commonwealth's burden, an arresting officer may testify upon personal knowledge that the subject school is an elementary school. See *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 730 n.1 (1992). Here, Hearns testified as follows: the school's name is St. Patrick's Elementary School, children between the ages of five and ten attend the school, his godchildren once were students there, and he used to work as a crossing guard there.

[12]The discussion and ruling on the defendant's motions for required finding of not guilty are not in the record before us. The Commonwealth, however, does not suggest that the defendant failed to preserve the issue.

from the school; this statement is accordingly far from dispositive.[13]

The Commonwealth also refers to the transcribed redirect examination of Hearns, during which the Commonwealth inquired about a woman the officer had encountered immediately following the drug sale. Following this subject, Hearns was asked to and did confirm earlier but untranscribed testimony to the effect that the distance was 680 feet. Asked about when the measurement occurred, Hearns testified, "we arrested him that night and the next morning I went there myself in broad daylight and measured it from *that location* to the school" (emphasis added). The Commonwealth contends that "the only sensible reading" of this testimony is that the distance referred to is that from the point of sale to the school. The Commonwealth's reading is not, however, the only sensible one since the testimony on which it relies is quite ambiguous about what is meant by "that location." Just prior to the referenced testimony, for instance, Hearns was asked about events surrounding the arrest. In addition, Hearns mentions the arrest, not the transaction, in the referenced comment that he measured from "that location" to the school, permitting the inference that "that location" refers to the place of arrest and not the site of the drug transaction. The inference that the distance measured was between the school and the drug transaction is not more compelling than that it was between the school and the place of arrest. See *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962) ("In choosing among the possible inferences from the evidence

---

[13]The Commonwealth suggests that the ambiguity of this comment can be resolved by the prosecutor's closing statement, "Officer Hearns testified that [the sale] took place [680] feet from [the school]," to which the defendant made no objection, as well as by the defendant's failure to argue the point in closing. We think neither is availing since closing argument is not evidence and any statements or omissions therein are irrelevant to a determination of the state of the evidence at trial. Cf. *Commonwealth* v. *Bradford*, 52 Mass. App. Ct. 220, 224 (2001). No meaningful or relevant light is shed upon the evidence from comments or objections made after the fact in such circumstances. We observe generally that the Commonwealth does not challenge the integrity of the record as reconstructed, only how it is to be interpreted. The Commonwealth had ample opportunity in the reconstruction process to contest any facts set forth in the affidavit of defense counsel and to file one of its own. Both parties must now rest on that reconstructed record and live with any shortcomings in it.

presented, a jury necessarily would have had to employ conjecture. This is insufficient to sustain the burden resting upon the Commonwealth").

Lastly, the Commonwealth argues, in effect, that even if "that location" were to refer to the place of arrest, the evidence nonetheless suffices to support the conviction. Hearns testified that the sale occurred within the "same area" as the arrest and, the Commonwealth reasons, the jurors permissibly could have inferred that the arrest happened within 320 feet of the place where drugs had been sold. There are problems with this argument, however, beginning with the fact that the reconstructed record is not quite as the Commonwealth would have it be.

The affidavit of trial defense counsel states that "Officer Hearns was patrolling the same area where he observed Mr. Williams on November 11, 1998." This statement does not appear to refer *either* to the location of the arrest or to the location of the sale, but only to the general area where Hearns was when he saw the defendant at some point on November 11. Moreover, the use of the verb "patrolling" suggests that "the same area" refers to a general vicinity rather than a fixed geographic point. The Commonwealth is obliged to demonstrate, with at least some degree of precision, that the illegal sale of drugs took place within 1,000 feet of a school. See *United States* v. *Soler*, 275 F.3d 146, 154 (1st Cir. 2002). Evidence that the arrest occurred 680 feet from the school and that Hearns had patrolled "the same area" on the night of the arrest, just as he had eighteen days earlier when the drug transaction took place, is not evidence permitting a reasonable inference that the place of arrest and place of drug sale were within 320 feet of each other.[14] Contrast *Commonwealth* v. *Johnson*, 53 Mass. App. Ct. 732, 733-735 (2002). Impermissible speculation by the jury would be necessary to close this gap. We conclude that it was error to have denied the defendant's motion that a required verdict of not guilty enter as to the school zone charge.

On the count charging distributing crack cocaine, the judgment is reversed and the verdict is set aside. On the count

---

[14]Compounding the difficulty, Hearns originally "observed" the defendant at 35-39 Mount Pleasant Avenue, but the actual sale occurred in an alley off Mount Pleasant Avenue.

charging distributing crack cocaine in a school zone, the judgment is reversed, the verdict is set aside, and judgment is to enter for the defendant.

*So ordered.*