NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11878

COMMONWEALTH  vs.  SANTIAGO NAVARRO.


Essex.     October 5, 2015. - May 5, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Identification.  Practice, Criminal, Instructions to jury,
    Assistance of counsel.  Constitutional Law, Assistance of
    counsel.



Indictments found and returned in the Superior Court
Department on July 2, 2010.

The cases were tried before Douglas H. Wilkins, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Elizabeth A. Billowitz for the defendant.
Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.
Karen A. Newirth, Kevin Puvalowski, Shin Hahn, & Jean
Ripley, of New York, & Matthew Nickell, for The Innocence
Network & another, amici curiae, submitted a brief.


HINES, J.  In January, 2012, a Superior Court jury

convicted the defendant, Santiago Navarro, on thirty

indictments, ten each charging armed robbery while masked, in violation of G. L. c. 265, § 17; home invasion, in violation of G. L. c. 265, § 18C; and kidnapping, in violation of G. L. c. 265, § 26.  The indictments stemmed from an incident during which the defendant and an accomplice invaded a home in North Andover and robbed the players in a high stakes poker game.  The defendant appealed, asserting various claims of error.  The Appeals Court affirmed the convictions.  Commonwealth v. Navarro, 86 Mass. App. Ct. 780 (2014).  We granted the defendant's application for further appellate review to consider the sole issue of the propriety of the judge's eyewitness identification instructions.  More specifically, we decide whether the judge's failure to instruct the jury in accordance with Commonwealth v. Rodriguez, 378 Mass. 296 (1979) (Rodriguez), S.C., 419 Mass. 1006 (1995), may be reviewed under the prejudicial error standard where the defendant neither requested the instruction nor objected to its omission.[1]  For the

---

[1] The defendant frames the issue as judicial error, arguing that the judge was required to provide an instruction pursuant to Commonwealth v. Rodriguez, 378 Mass. 296 (1979), S.C., 419 Mass. 1006 (1995), sua sponte.  We regard this as a strategic gambit that the defendant appears to believe would call for review under the more favorable "prejudicial error" standard rather than the substantial risk of a miscarriage of justice standard applicable to the defendant's alternative ineffective assistance of counsel claim.  The gambit fails, however, because even if we were to conclude that the judge was required to give such an instruction sua sponte, the issue was not preserved and we would still determine whether the omission created a

reasons set forth below, we conclude that in the absence of a request, the defendant may not attribute the omission of a Rodriguez eyewitness identification instruction to judicial error and, as a consequence, he is not entitled to review on that ground.  Instead, we review the issue under the rubric of the defendant's alternative claim that counsel's failure to request a Rodriguez instruction was constitutionally ineffective.  We agree that counsel's performance in this respect fell "measurably below that which might be expected from an ordinary fallible lawyer," Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), but we conclude that the lapse was not so prejudicial as to result in a substantial risk of a miscarriage of justice.

Background.  From the evidence admitted at trial, the jury could have found the following facts.  On June 13, 2010, two roommates hosted a high stakes poker game at their apartment in North Andover.  The apartment was on the second floor of a two-family home.  The poker room was in the rear of the apartment and was accessible by a rear door.  The poker game was a regular event that attracted eight to ten friends on average.  Each card player entered the game with one hundred dollars or more, with

substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

the option to reenter the game with more cash if he lost his initial stake.

On the night in question, the poker game started sometime after 9 P.M. with a small group that, around 10:30 P.M., had grown to eleven card players. Among this group was Christopher Maldonado, known as "Shorty." After losing his money, Maldonado stayed in the apartment, where the victims observed him sending text messages on his cellular telephone. Sometime after Maldonado was out of the game, two masked men entered the apartment. One of the men was armed with a gun and demanded the card players to empty their pockets and place their cellular telephones on the table. After collecting the items, the assailants bound the victims' hands. Initially, Maldonado pretended to be a victim and, as with the others, the robbers bound his hands and demanded his cash. Later as events progressed, Maldonado announced that he "set [the robbery] up" and that he was "hungry [for money]." Maldonado then assisted in collecting the victims' property and escaped with the robbers. After the robbers escaped, two of the victims freed themselves and, from a window in the apartment, observed the robbers getting into a dark blue Mitsubishi Galant automobile bearing Massachusetts license plate number 777-MF or 7777-MF. The victims got into a vehicle and pursued the robbers until they reached an entrance to Route 495. At that point, they abandoned

the chase and returned to the apartment, where they were met by Detective Daniel G. Cronin of the North Andover police department.  Detective Cronin commenced his investigation based on the victims' descriptions of the suspects and the getaway vehicle.

The defendant came to Detective Cronin's attention as a suspect the day after the robbery when he and a woman appeared at the North Andover police station in a vehicle fitting the description of the vehicle that the victims had observed leaving the scene of the crime.  The defendant identified himself to Detective Cronin as Santiago Navarro, and the woman produced a driver's license identifying herself as Milagros Fernandez.  The defendant told Detective Cronin that Fernandez, "his girl," had a question about her vehicle.[2]  Detective Cronin spoke to them and observed them as they entered the vehicle and drove away.

Four days after the robbery, Detective Cronin prepared and showed an array containing the defendant's photograph to some of the victims.  Of the six victims who viewed the array, only two identified the defendant as one of the masked perpetrators, specifying that he was the assailant with the gun.

---

[2] The judge excluded Milagros Fernandez's statement that she had come to the police in response to news reports that her automobile, the Galant, had been used as the getaway vehicle in the robbery.

Nine days after the robbery, the police arrested Maldonado, who immediately began cooperating in exchange for concessions in a plea agreement. Maldonado testified at trial that he and the defendant, who was known to him as "Raw," discussed a plan to rob the victims. About one week before the robbery, Maldonado and the defendant drove to the victim's apartment in a blue Mitsubishi Galant (described by Maldonado as having a license plate with "a few 7's, M-F") and conducted their surveillance of the area. Maldonado and the defendant agreed on a plan for the defendant to enter the apartment during the game and commit the robbery. According to the plan, Maldonado would send text messages to the defendant to indicate when all of the players would be in one room and the defendant would then enter the apartment. The robbery occurred as planned, and Maldonado fled the scene with the defendant in the same Galant used to conduct their surveillance a week earlier.

To corroborate Maldonado's testimony regarding his contacts with the defendant on the evening of the robbery, the prosecutor introduced Fernandez's cellular telephone records. Those records established thirty to forty calls and text messages between Maldonado and the defendant beginning on the day of the robbery and ending in the early morning hours of the day after the robbery. At least twenty-five of those contacts occurred between the late evening on the day of the robbery and the early morning hours of

the next day. Maldonado testified that the defendant used the telephone number associated with Fernandez's telephone and that he was corresponding with the defendant during those contacts.

Maldonado acknowledged that he expected to receive a reduced sentence for his role in the robbery in exchange for truthful testimony about the crime. Defense counsel vigorously cross-examined him about his agreement with the Commonwealth and argued to the jury that Maldonado was not credible because his testimony was entirely self-serving.

Discussion. 1. Necessity of a request for Rodriguez eyewitness identification instructions. The defendant argues that the judge was required, sua sponte, to charge the jury in accordance with Rodriguez and that the failure to do so was error.[3] The argument lacks merit because the law as it existed

---

[3] We note that this case was tried before our most recent eyewitness identification cases, which altered our jurisprudence so as to give effect to certain generally accepted scientific advances in the understanding of the reliability of eyewitness identification. See Commonwealth v. Bastaldo, 472 Mass. 16, 23-30 (2015) (holding that instructions on cross-racial identification required prospectively unless parties agree there was no cross-racial identification); Commonwealth v. Gomes, 470 Mass. 352, 361-378 (2015) (augmenting and supplementing Rodriguez to include five specific principles shown to be generally accepted in relevant scientific community); Commonwealth v. Collins, 470 Mass. 255, 259-267 (2014) (precluding in-court identification where witness made less than positive pretrial identification, except on showing of "good reason"); Commonwealth v. Crayton, 470 Mass. 228, 238-244 (2014) (precluding in-court identification where witness made no pretrial identification, except on showing of "good reason").

at the time of the trial did not require a sua sponte Rodriguez eyewitness identification instruction.[4]

As a threshold matter, we note that despite basing his appeal in substantial part on the contention that a defendant is entitled as a matter of right to a sua sponte Rodriguez instruction, the defendant has failed to direct us to a single case explicitly compelling, or even marginally supporting, this position. Instead, he points only to the observation in Commonwealth v. Williams, 54 Mass. App. Ct. 236, 240 (2002), that a Rodriguez instruction is proper "whenever identification is an issue raised by the evidence." This statement, of course, affirms a basic principle of our eyewitness identification jurisprudence. It does not, however, stand for the proposition that counsel is relieved of the burden to request an eyewitness identification instruction when it is appropriate to do so.

In Rodriguez, the seminal case in our law on eyewitness identification instructions, we linked entitlement to the

---

[4] The defendant also claims that omission of the Rodriguez instruction violated his constitutional right to a fair trial. However, he presents this claim in summary fashion only, omitting any reference to the constitutional provisions underlying this claim and making no attempt to explain how the application of these provisions compels the result he seeks. Because we deem the argument insufficient to meet the requirements of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), we decline to consider whether the omission of an eyewitness instruction in accordance with Rodriguez is a violation of the defendant's constitutional right to a fair trial.

instruction to a specific request from the defendant.  The necessity of a request is implicit in our statement that "a defendant who fairly raises the issue of mistaken identification might well be entitled to instructions" alerting the jury to the risk of misidentification and suggesting factors that might mitigate that risk in evaluating eyewitness identification testimony (emphasis added).  Rodriguez, 378 Mass. at 302.  The myriad post-Rodriguez cases,[5] reflecting the state of the law at the time of the trial in this case, have reiterated that counsel should request a Rodriguez instruction when eyewitness identification is a live issue in the case.  More recently in Commonwealth v. Franklin, 465 Mass. 895, 912 (2013), we underscored the point, noting that "where requested by the defendant, . . . a judge should provide specific guidance to the jury regarding evaluation of such eyewitness testimony" (emphasis added).  This court's reference in Franklin to "where requested" follows the path charted by Rodriguez and its progeny

---

[5] See, e.g., Commonwealth v. Watson, 455 Mass. 246, 259-260 (2009) (judge's eyewitness instructions in accordance with Rodriguez and Commonwealth v. Pressley, 390 Mass. 617, 619 [1983], given at defendant's request, sufficient without "cautionary" instructions); Commonwealth v. Pires, 453 Mass. 66, 72 (2009) ("when the evidence so warrants and when a defendant requests the instruction," no harm in giving "honest but mistaken" language from Pressley with Rodriguez instruction).

in presuming the necessity of a request by the defendant.[6]

Therefore, we reject the defendant's contention that at the time

of the trial in this case a sua sponte Rodriguez instruction was

required and that the failure to provide it sua sponte was

error.

We address briefly the defendant's reliance on the Supreme

Judicial Court Study Group on Eyewitness Evidence:  Report and

Recommendations to the Justices (July 25, 2013), available at

http://www.mass.gov/courts/docs/sjc/docs/eyewitness-evidence-

report-2013.pdf [http://perma.cc/WY4M-YNZN] (Study Group

Report), to support the argument that at the time of the trial

in this case the judge was obliged to instruct the jury sua

sponte in accordance with Rodriguez.  This reliance is

misplaced.  The Study Group Report is the product of this

court's charge to the study group to offer guidance as to how

---

[6] Because the issue in this appeal involves the law at the time of the trial, we caution against any implication that a judge should not give an eyewitness identification instruction unless the defendant requests it.  Before the adoption of the Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051 (2015), ambiguity may well have clouded the boundaries of the judge's discretion to provide eyewitness identification instructions.  The newly adopted model instructions seek prospectively to resolve that ambiguity by stressing the necessity of appropriate instructions tailored to the particular identification issues in the case.  See id. at 1053 n.1 ("This instruction should be given in any case in which the jury heard eyewitness evidence that positively identified the defendant and in which the identification of the defendant as the person who committed or participated in the alleged crime[s] is contested").

our courts can most effectively "deter unnecessarily suggestive [identification] procedures and whether existing model jury instructions provide adequate guidance to juries in evaluating eyewitness testimony." Commonwealth v. Walker, 460 Mass. 590, 604 n.16 (2011). Consistent with this charge, the Study Group Report marshals the current science underlying the reliability of eyewitness identifications, offers a blueprint for changes in our eyewitness identification jurisprudence, and documents with some urgency the need for specific reforms to mitigate the possibility of wrongful convictions based on mistaken identifications. It does not purport to be, nor is it, an authoritative statement of the law governing a judge's obligation to provide a Rodriguez instruction in the absence of a request by the defendant. Thus, we reject the defendant's suggestion that the Study Group Report should inform our review of the judge's instructions in this case.

2. Ineffective assistance of counsel. In view of our determination that the judge's failure to provide a Rodriguez instruction sua sponte was not error, we consider the defendant's alternative argument that, in failing to request a Rodriguez instruction, counsel rendered constitutionally ineffective assistance to the defendant. "[W]hen [a] claim of ineffective assistance of counsel is predicated . . . on

counsel's failure to object to something that occurred at trial, the standard for evaluating the ineffectiveness claim is not significantly different from the substantial risk standard that is applicable to our review of the underlying, unpreserved error." Commonwealth v. Azar, 435 Mass. 675, 686 (2002). A substantial risk of a miscarriage of justice exists if "we have a serious doubt whether the result of the trial might have been different" if the Rodriguez instruction had not been omitted. Id. at 687, quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999). "We review the evidence and the case as a whole. We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision."[7] Azar, supra.

At the charge conference, the judge solicited proposed instructions from counsel. The defendant's counsel did not request a Rodriguez instruction. The judge, however, instructed the jury generally on the issue, highlighting the importance of the eyewitness identifications in the case and the

[7] Although "our courts strongly disfavor raising claims of ineffective assistance on direct appeal," we may resolve the defendant's claim because it fits within the narrow exception to the rule requiring such claims to be raised in a motion for a new trial where the "factual basis of the claim appears indisputably on the trial record." Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).

Commonwealth's burden to prove beyond a reasonable doubt the identity of the perpetrators. In the only specific reference to the eyewitness identification issue, the judge instructed the jury on the possibility of an honest but mistaken identification in accordance with Commonwealth v. Pressley, 390 Mass. 617, 619-620 (1983). At the end of the judge's charge, defense counsel offered no objection to the omission of the Rodriguez instruction.

The need for a Rodriguez instruction in the circumstances of this case, however, was apparent. Because the robbers were masked and otherwise unknown to the victims, the identification of the defendant was highly vulnerable to attack on grounds that would have been highlighted in a Rodriguez instruction. For example, one victim identified the defendant at trial but acknowledged that he was able to do so by "his eyes" only because no other part of the defendant's face was visible during the robbery. A Rodriguez instruction would have highlighted for the jury the importance of "the capacity and an adequate opportunity to observe" the perpetrator. Rodriguez, 378 Mass. at 310 (Appendix). Thus, it is inconceivable that, in the circumstances of this case involving unknown masked perpetrators, counsel's failure to request a Rodriguez instruction could be justified on strategic grounds. In our

view, therefore, the failure to request a <u>Rodriguez</u> instruction was conduct that fell "measurably below that which might be expected from an ordinary fallible lawyer." <u>Saferian</u>, 366 Mass. at 96. We turn now to a determination whether counsel's error "has likely deprived the defendant of an otherwise available, substantial ground of defence," <u>id</u>. at 96, where we effectively determine whether the error resulted in a substantial risk of a miscarriage of justice. <u>Azar</u>, 435 Mass. at 686. In assessing the prejudicial effect of the <u>Rodriguez</u> omissions from the charge, we evaluate the impact of the claimed error in the context of the entire charge. See <u>Commonwealth</u> v. <u>Nadworny</u>, 396 Mass. 342, 360 (1985), cert. denied, 477 U.S. 904 (1986).

3. <u>Prejudicial effect of the</u> Rodriguez <u>omissions</u>. Although we reject certain of the defendant's claims regarding the prejudicial effect of the <u>Rodriguez</u> omissions, we are persuaded that, considered in their totality, the instructions given were inadequate to assist the jury in assessing the reliability and accuracy of the victims' eyewitness identifications. In relevant part, the judge instructed the jury as follows:

> "Now, one of the most important issues in this case is the identification of the defendant as the alleged perpetrator of the crime. Now, in addition in deciding whether or not to believe a witness who identifies the defendant as the perpetrator, remember that you must consider not only whether the witness is trying to tell the

truth or is lying, you must also consider whether that witness's testimony is accurate or instead is an honest mistake. Sometimes people perceive an event erroneously or forget things or become confused.

"In deciding whether a witness is trying to be truthful is only the first step. You must then go on to decide whether the witness's testimony on this issue is accurate in fact.

"Now, I once again emphasize that the burden of proof that's on the prosecutor extends to every element of the crimes charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crimes for which he stands charged.

"If, after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty. In deciding whether or not to believe a witness who identifies the defendant as the perpetrator, remember that you must not only consider whether the witness is trying to tell you the truth or is lying, you must also decide whether that witness's identification is accurate or instead may well have been an honest good-faith identification that nonetheless may have been mistaken."

As given, the judge's instructions appropriately focused on the risk of an honest but mistaken eyewitness identification where, as here, the perpetrators were masked and unknown to the victims. The judge's strong caution as to this risk, together with his reiteration of the prosecutor's burden to prove identification beyond a reasonable doubt, provided some of the information necessary to assist the jury in deciding the credibility of the eyewitness identifications. "Although the charge touched on the thrust of Rodriguez by instructing the

jury to consider the possibility of an honest mistake, [the instructions] did not equip the jury with the proper tools to help them recognize the circumstances that might lead a witness to make such a mistake." Commonwealth v. Monteiro, 51 Mass. App. Ct. 552, 562 (2001).

The defendant characterizes the judge's charge as a "complete failure" to provide guidance to the jury on the evaluation of the eyewitness identification evidence presented at trial, and argues that the particular omissions from the Rodriguez instruction constitute reversible error. More specifically, he claims prejudice from the omission of the following Rodriguez factors: (i) capacity and opportunity of the eyewitnesses to observe the perpetrators; (ii) failed or inconclusive identifications; (iii) influence or suggestiveness in the identifications; and (iv) length of time between the event and the identifications. We consider each of the Rodriguez omissions as a factor in the determination whether counsel's lapse resulted in a substantial risk of a miscarriage of justice.

a. The Rodriguez factor relating to a witness's capacity and opportunity to observe was essential in this case, where the robbery was perpetrated by three individuals, two of whom were masked and unknown to the victims, and the defendant was identified as one of the masked robbers. Here, the judge

instructed the jury generally on the importance of a witness's "opportunity or lack of opportunity" to observe and an eyewitness's "ability" to understand, to recall, and to accurately describe what he or she observed during the event. This instruction, however, was an inadequate substitute[8] for what the jury should have been told in accordance with Rodriguez.[9]  As is plain, the Rodriguez language apprises the jury in a more detailed fashion of the factors that bear on their assessment of the opportunity and ability to observe the perpetrator.  In addition, it is important for the jury's consideration of the

---

[8] This portion of the judge's instruction provided as follows:

"Did the witness appear to know what the witness was talking about, what was the opportunity or lack of opportunity that the witness had to see and learn the facts about which he or she was testifying?

"What was the ability of the witness to understand, to recall and to accurately describe those things that a witness was testifying to?"

[9] The portion of the Rodriguez instruction on this point provides as follows:

"Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, and whether the witness had had occasion to see or know the person in the past."

Rodriguez, 378 Mass. at 310 (Appendix).

accuracy and reliability of the identification to hear that instruction in the context of other factors bearing on that issue. We are persuaded on the basis of this omission alone that the eyewitness instructions to the jury were inadequate.

b. The defendant argues that the lack of the Rodriguez instruction on the effect of failed or inconclusive identifications[10] was inadequate where some of the witnesses in this case were unable to make any identification from the photographic array, and those who did make an identification were inconsistent in their level of certainty. It is doubtful that the omission of this Rodriguez factor was problematic on either ground.

None of the witnesses who were unable to identify the defendant from the photographic arrays made an in-court identification at trial. As to these witnesses at least, there was no necessity for a Rodriguez instruction. See Commonwealth v. Johnson, 470 Mass. 389, 390 (2015) (declining to find abuse of discretion in judge's denial of request for eyewitness identification instruction where there was no positive eyewitness identification and "no other eyewitness testimony that significantly incriminated the defendant"). Two of the

---

[10] "You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with [the] identification at trial." Rodriguez, 378 Mass. at 311.

victims made what they described as positive identifications but neither failed to make an identification of the defendant when presented with the opportunity to do so.

The defendant's claim that the eyewitnesses contradicted their level of certainty does not, in any event, require an instruction on this factor. Both eyewitnesses testified to being one hundred per cent certain of their identifications. Although neither wavered from his claim to be one hundred per cent certain of their identifications, Detective Cronin testified that they expressed less than one hundred per cent certainty, an eight on the scale of one to ten. Even assuming a contradiction in the witnesses' level of certainty, this instruction is not intended to address that issue directly. Rather, it relates primarily to the situation where a witness has failed to make an identification or identified a person other than the defendant. See Commonwealth v. Bol Choeurn, 446 Mass. 510, 518 (2006) (inconsistent identification portion of Rodriguez instruction properly given to jury on factors considered where witness identified photograph of someone other than defendant). Where neither scenario occurred here, this instruction would not necessarily have been helpful or required to assist the jury in assessing the eyewitness identifications. In these circumstances, the judge properly could have exercised

the discretion to omit this factor, and no prejudice resulted from its omission.

c. Next, the defendant contends that the jury should have been apprised of the Rodriguez factor relating to the possible role of influence or suggestion in the identifications.[11] More specifically, he argues that the jury should have been instructed that the identification procedures used by Detective Cronin did not comport with the protocol suggested in Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-798 (2009). He points out that there was no double-blind array; the photographs were shown to the victims simultaneously rather than sequentially; and the procedure was not recorded or otherwise documented.

As a threshold matter, it does not appear that the defendant ever requested an instruction regarding the failure to comply with the Silva-Santiago protocol. Also, the defendant incorrectly posits that the suggested Silva-Santiago protocol

---

[11] Rodriguez, 378 Mass. at 311 (Appendix), instructs that a jury may consider the following circumstances:

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification."

includes a double-blind procedure, a sequential array, and a recording of the procedure.  Although we noted the efficacy of these procedures in minimizing the risks of misidentification,[12] the protocol relates only to the content of the police officer's dialogue with the identifying witness.  Furthermore, we pointedly declined to require a double-blind procedure where it might not be practicable, or either a sequential array or recording.  Id. at 797-798.

d.  As to the instruction on the length of time between the robbery and the identification,[13] we agree that the lapse of time is a factor that may impair the reliability of an identification and that the four-day delay in this case is a factor that the jury should have considered.  While appropriate, the omission of this factor did not seriously compromise the adequacy of the judge's charge or otherwise result in prejudice to the defendant.

---

[12] In Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-798 (2009), we declined, based on concerns of practicality, to require a double-blind procedure.  At the same time, we noted that "it is the better practice because it eliminates the risk of conscious or unconscious suggestion."  Id. at 797.

[13] In Commonwealth v. Cuffie, 414 Mass. 632, 641 (1993) (Appendix), we revised the Rodriguez language on this point as follows:  "You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness, some time after the occurrence of the crime, to see and identify the defendant as the offender, as a factor bearing on the reliability of the identification."

Although we conclude that the Rodriguez instructions should have been given, especially in the circumstances of this case where the sole issue was the identity of a masked perpetrator, we are not persuaded that the defendant has met his burden to show that the result of the trial would have been different if those instructions had not been omitted.  First, we reject out of hand the defendant's contention that the evidence was "less than overwhelming."  To the contrary, the evidence of the defendant's identity as one of the perpetrators was strong.  See Commonwealth v. Amirault, 424 Mass. 618, 650 (1997) ("Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk . . . of a miscarriage of justice" occurred [citation omitted]).  While it may be reasonable to discount the victims' identifications because the robbers were masked, the defendant's identity as a perpetrator of the crime did not rest solely, or even largely, on those identifications.  The most potent evidence of the defendant's identity as the perpetrator came from Maldonado, his coventurer in the crimes.  Maldonado admitted his role as an accomplice and testified that he and the defendant planned and executed the robbery and shared the proceeds.

We have taken due notice of the defendant's attack on the probative force of Maldonado's testimony, characterizing it as a

self-serving ploy to secure sentencing concessions on the indictments for his participation in the crimes.  Maldonado's self-interest notwithstanding, the defendant made no headway in impeaching the credibility of Maldonado's testimony, a task made all the more difficult by the telephone records that substantially corroborated that testimony.

Beyond the damaging identification by Maldonado and the corroborating telephone records, the jury were presented with unimpeached testimony from the victims who identified the getaway vehicle that the police later discovered to belong to the defendant's girl friend.  The defendant's connection to the vehicle was confirmed when he and his girl friend appeared at the police station the day after the robbery in the same vehicle asking questions about her vehicle.[14]

Conclusion.  Because the defendant has not met his burden to establish a substantial risk of a miscarriage of justice from the omission of the Rodriguez instruction, we affirm the convictions.

So ordered.

---

[14] See note 2, supra.