NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-69                                               Appeals Court

COMMONWEALTH  vs.  DONNA BEAULIEU.

No. 15-P-69.

Essex.     April 12, 2016. - December 21, 2016.

Present:  Cohen, Rubin, & Hanlon, JJ.

Assault and Battery.  Practice, Criminal, New trial, Comment by judge, Disqualification of judge, Assistance of counsel. Evidence, Prior misconduct, Identification. Identification.

Complaint received and sworn to in the Lynn Division of the District Court Department on April 24, 2013.

The case was tried before Albert S. Conlon, J., and a motion for a new trial was heard by him.

Andrew P. Power for the defendant.
Marcia H. Slingerland, Assistant District Attorney, for the Commonwealth.

HANLON, J.  After a jury trial, the defendant, Donna

Beaulieu, was convicted of assault and battery on her teenage

daughter.[1]  Approximately one week later, the victim recanted; the defendant then filed a motion for a new trial based solely on the recantation.  After an evidentiary hearing, the motion was denied.  The defendant now appeals from the denial of her motion for a new trial, arguing that the judge abused his discretion by "berating" the recanting witness and threatening her with incarceration for testifying in support of the defendant's motion.

The defendant also appeals from her underlying conviction on three grounds.  First, she argues that the judge abused his discretion by admitting evidence at trial of prior bad acts.  Second, she alleges counsel was ineffective for failing to object to that evidence and for calling a police witness who gave damaging testimony.  Finally, the defendant contends that the judge erred in denying her motion for a required finding of not guilty, given what she describes as a lack of identification evidence at trial.  We affirm.

Background.  a. The trial.  The jury heard the following evidence.  On April 22, 2013, the victim, a middle school honor student, became ill at school; she went to the school nurse's office, and, afterwards, her mother picked her up and took her home.  When she arrived at home, she rested on the couch for a

---

[1] The defendant was acquitted of assault and battery by means of a dangerous weapon.

few hours, then had dinner and started working on her homework in the kitchen.  At some point later, her mother called her into the living room; her mother was "frustrated" because she was having difficulty using a Web site relating to their cellular telephones.  When the victim came into the living room, her mother was "in . . . a bad mood overall" and began yelling at the victim about "just everything" and for not filling out an "award sheet."

The victim went into another room to fill out the award sheet on her own, as she did not want her mother's help.[2]  When she was putting the completed form into her bag, her mother asked to review the sheet to make sure it was done correctly. When the victim refused (because she believed she had completed the form correctly and did not want her mother to change it), her mother became "very angry," "mean," and "cold."  The mother then took the sheet from the victim, as well as the wooden pencil she was using.  The victim decided to "diffuse the situation" by showering while her mother was looking over what the victim had written.

---

[2] The award sheet was a document that the victim was to prepare to explain why she thought that she should receive an award.  She testified that she did not want her mother's help "[b]ecause my mom lies on things like that.  We had done something very similar to it a couple weeks prior and some of the things that she made me put down were very dishonest and I didn't want that because my teachers know who I am and I wanted them to choose for themselves like that I was a good enough student to get whichever award it was I was going to get."

When the victim returned to the living room after her shower, she asked her mother for the award sheet back; the mother refused, saying that the victim did not need the sheet and that "[she] did it wrong." After asking a few more times, the victim started backing away from her mother, "because [the victim] [knew] that [her mother] has a very violent, like, cycle"; "when things get [the defendant] upset, sometimes she resorts to violence and physical punishment." When the victim began walking upstairs to her bedroom, her mother followed, and then shoved the victim several times in the right arm causing her to hit her left arm against the wall; at the same time, the eraser top on the pencil the defendant was holding jabbed into the victim's side "causing a very small bruise." After she followed the victim upstairs and into her bedroom, the victim's mother hit her in the face with the palm of her hand, producing a swollen lip when the victim's tooth cut into her lip.

At school the next day, one of the victim's friends noticed that the victim was "unusually upset," and the friend asked her what was wrong. The victim told her friend that she had gotten into a fight with her mother the previous night, and showed her friend the bruise on her arm that "was a lot worse than [she] thought it was."[3] Another friend brought the victim to the

---

[3] The mother had driven the victim to school that morning; when she was getting out of the car, the victim told the

guidance office, where the victim told the counsellor what had happened the night before; the victim then went to the school nurse's office, where she spoke with the school principal and Saugus Police Detective Sean Moynahan.[4] The victim was taken directly to the hospital.

At trial, the victim testified that her mother had been hitting her at least two times each month for the last three or four years (beginning after her brother moved out); the victim never reported this abuse to anyone, including her pediatrician, friends, or neighbors, and the police were never called. Her mother hit her, causing bruises, in places on her body that were usually covered with clothing. On cross-examination, the victim read aloud a complimentary school essay that she had written about her mother (approximately one month before the incident occurred). In the essay, the victim described her mother as "brave and courageous and admirable."

Moynahan, testifying as a defense witness, stated that he had a brief conversation with the victim at the school nurse's office, where she was sitting with ice on her arm in the nurse's office; he opined that the victim was "very articulate, very

---

defendant she loved her, and her mother replied, "If you really love me, you wouldn't be treating me the way you do."

[4] The guidance counsellor and Moynahan each took photographs of the bruises on the victim's arm, hip and lip (admitted at trial as exhibits 1-6).

intelligent.  She was very upset and sad.  She was -- in the school she was in an extreme amount of pain."  Moynahan confirmed that he had taken photographs of the victim's injuries in the nurse's office, although he seemed confused about which arm he had photographed and which arm the defendant had grabbed. It was at the hospital that the victim told Moynahan the details of the incident, and he saw that she had "an extensive injury" on her left arm; the victim also told Moynahan that the abuse by the defendant had been ongoing since she was in the fifth grade.

After he returned to the police station, Moynahan telephoned the defendant and requested that she come to the police station; when the defendant arrived, she was arrested. The defendant also testified and denied ever abusing the victim.

b.  Motion for a new trial.  Approximately one week after the trial, the victim, who had been placed by the Department of Children and Families in the home of her aunt, attempted to reach her mother.  The defendant's counsel responded to the victim and explained that the defendant was not permitted to have contact with her.  The victim then sent a letter to defense counsel, addressed "To Whom It May Concern."  In the letter, she "recant[ed] everything from [her] testimony," and "just want[ed] to make things right and go home to [her] [m]om."  This letter and an affidavit from defense counsel were presented with the defendant's motion for a new trial.

On June 26, 2014, at a hearing on the defendant's motion for a new trial, the judge expressed his concerns and announced that he would research the remedies for punishment available to him if the victim acknowledged perjuring herself at trial. He stated more than once that he considered perjury a serious matter and that there likely would be consequences if the victim admitted under oath that she had committed perjury.[5] Finally, he said that he wanted to "give everyone the weekend to think about" the victim's recantation.

At the hearing, approximately one week later, the victim was the only witness. She testified that she had lied during her trial testimony about her mother's abuse, and that, after she told the lie, she felt she could not take it back because

---

[5] The judge's initial comments included:

"I can't tell you how offensive I find it that someone would put their hand up, swear to tell the truth, and then perjure themselves at the expense of someone they love. That is not something I walk away from.

"If I have remedies that I can punish I'm likely to use them . . . .

"I'm going to step it back for a minute because I'm going to find out what my remedies are. I may not wait for the district attorney's office to take action . . . and I'm talking incarceration. . . .

"I want the Commonwealth -- actually I'm going to give everyone the weekend to think about this. I want the Commonwealth to find out what it perceives my remedies are, and I'm going to do some research as to what I think my remedies are, but these aren't games we play."

she was afraid and intimidated by the police and also by her aunt.  Her new explanation for her injuries was that she had been attacked in the school bathroom by two female students; she was unsure of their full names.

The judge denied the defendant's motion, stating that he had found "the victim's trial testimony compelling and consistent with other evidence admitted in the case and her testimony on the [m]otion for [n]ew [t]rial less so and inconsistent with other independent evidence."  The defendant timely appealed.

Discussion.  a.  Denial of the motion for new trial.  "In reviewing an order granting or denying a motion for a new trial, we accord deference to the views of a motion judge who was also the trial judge."  Commonwealth v. Spray, 467 Mass. 456, 471 (2014), quoting from Commonwealth v. LeFave, 430 Mass. 169, 176 (1999).  "The decision to grant or deny a motion for a new trial 'is left to the sound discretion of the motion judge.'"  Id. at 472, quoting from Commonwealth v. Jones, 432 Mass. 623, 633 (2000).

We consider first the defendant's claim that, given the brevity of his decision, the judge abused his discretion by failing to give the victim's recantation adequate consideration. On that issue, we are satisfied that the judge, who heard all of the trial evidence, as well as the victim's recantation at the

motion hearing, was entitled to find that the evidence presented at the motion hearing simply failed to cast doubt on the truthfulness of the victim's trial testimony.  See Commonwealth v. Rebello, 450 Mass. 118, 131 (2007).  The defendant did not request further findings, and none were required.  Implicit in the judge's rejection of the recantation and his denial of the motion for a new trial was his assessment that the victim's new testimony would be so vulnerable to impeachment at a new trial that it would be "relatively worthless."  Commonwealth v. Santiago, 458 Mass. 405, 415 (2010), quoting from Commonwealth v. Ortiz, 393 Mass. 523, 537 (1984).  There was no abuse of discretion.

The defendant next argues that the judge committed an abuse of discretion by "berating" and "threatening" the victim at the first day of the hearing on the motion for a new trial.  We disagree.  Generally, it is not inappropriate for a judge to warn someone proposing to recant that perjury carries consequences, including, possibly, incarceration.[6]  A judge may

---

[6] We note that G. L. c. 268, § 4, provides the judge with authority to take action if there is reason to believe that a witness has committed perjury ("If it appears to a court of record that a party or a witness who has been legally sworn and examined, or has made an affidavit, in any proceeding in a court or course of justice has so testified as to create a reasonable presumption that he has committed perjury therein, the court may forthwith commit him or may require him to recognize with sureties for his appearance to answer to an indictment for perjury; and thereupon the witnesses to establish such perjury

remind a witness of the "duty to tell the truth."  Commonwealth v. Britto, 433 Mass. 596, 612 (2001).  See Sandrelli v. Commonwealth, 342 Mass. 129, 130 (1961) (judge instructing grand jury witness on rights and duties including privilege against self-incrimination); Commonwealth v. Slaney, 345 Mass. 135, 141-142 (1962) (judge's discretion to instruct witness about right to refuse to answer questions that could incriminate her); Commonwealth v. Molina, 454 Mass. 232, 240 (2009).  Cf. Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 74 (2005) ("It is well established that a judge in this Commonwealth may question witnesses to clarify and develop evidence and to avert perjury").  Here, the judge followed his admonitions with an assurance that he was "not trying to put a chill on anybody's testimony"; the victim had the benefit of counsel to advise her, and ultimately, she went forward with her testimony.  In this case, even if more measured language might have been better suited to this particular situation, we see no abuse of discretion.

The defendant's further argument, that the judge should have disqualified himself sua sponte, is also unavailing.  There were legitimate concerns about perjury in this situation; either

---

may, if present, be bound over to the superior court, and notice of the proceedings shall forthwith be given to the district attorney").  Obviously, applying such a sanction to a juvenile would present special problems.  However, nothing like that happened here.

the victim had been untruthful at trial or she was being untruthful in her recantation. There also was reason to suspect that the recantation was influenced by the victim's desire to "go home to [her] [m]om," as stated in her letter to defense counsel. Although the judge's expressions of dismay and skepticism were strong language, they simply reflect the reality of the choices he faced; they do not demonstrate that he was disabled from considering the motion for a new trial impartially. Indeed, it is difficult to imagine how a second judge would be more suited to judge the witness's credibility without having heard the trial testimony.

We reiterate that neither the defendant's lawyer nor the victim's lawyer objected to the judge's words in any way. As noted, the judge concluded the motion hearing with the statement, "I'm not trying to put a chill on anybody's testimony, but I just want everyone to understand how seriously I take this." The victim's lawyer responded, "I understand, Judge. I'll talk to my client." In addition, because the victim persisted in her recantation, despite the judge's remarks, the defendant cannot be said to have been prejudiced.[7]

---

[7] The latter fact was used to advantage in argument by defense counsel: "When [the witness] testified today she made reference to being in court last week when your Honor very forcefully told her that your Honor was going to look into bringing what . . . action you could take against her, specifically ordered the district attorney's office to look into

Even now, she makes no suggestion and certainly no offer of proof as to how she might have been prejudiced by what the judge said to the witness.

We are satisfied that the judge, properly relying on the evidence presented at the motion hearing, and based on his "knowledge and evaluation of the evidence at trial," did not abuse his discretion in finding that the evidence offered at the hearing on the motion for a new trial had failed to cast doubt on the truthfulness of the victim's trial testimony. Commonwealth v. Rebello, 450 Mass. at 131, quoting from Commonwealth v. Croken, 432 Mass. 266, 271 (2000).

b. Direct appeal.[8] The defendant also argues three trial errors: (1) prior incidents of abuse were improperly admitted;

---

what action they could take against her. She testified that her own mother told her, 'Do what's best for you. Don't -- you know, if it turns out you can't do this, don't worry about me. Do what's best for you.' She testified that she's here today telling the truth because it's not morally right to go on with a lie and to allow her mother to take the blame for something that she did not do. I would suggest that her testimony today is believable."

[8] The defendant did not file a notice of appeal of her conviction before filing the motion for a new trial. As a result, the thirty-day period for filing that notice terminated upon the filing of her motion for a new trial. See Mass.R.A.P. 4(b), as amended, 431 Mass. 1601 (2000). Once the motion for a new trial was denied, the thirty-day period for filing an appeal began again. Although the defendant's notice of appeal specifically cites only the denial of the motion for a new trial, we include in this opinion the issues she raises relative to the underlying conviction as well as the denial of the motion

(2) her motion for a required finding of not guilty was improperly denied because the defendant had not been identified as the offender described in the trial; and (3) the defendant was deprived of effective assistance of counsel.

We see no error.  First, the judge properly admitted prior uncharged acts of abuse by the defendant against the victim in order to provide "the history of the relationship [between the defendant and the victim] to give context to the jury."  "The decision to admit the evidence of prior bad acts is committed to the sound discretion of the judge, whose determination will be upheld absent palpable error."  Commonwealth v. Montez, 450 Mass. 736, 744 (2008).  Such evidence may be admitted "to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." Commonwealth v. Julien, 59 Mass. App. Ct. 679, 686 (2003), quoting from Commonwealth v. Roche, 44 Mass. App. Ct. 372, 380 (1998).

Second, the defendant's motion for a required finding of not guilty was properly denied, as there was evidence sufficient to support the verdict.  In addition, we note that the defendant failed to raise the issue of her identification at trial in her motion for a required finding.  "All grounds for relief . . .

for a new trial.  See Mass.R.A.P. 3(c), as appearing in 430 Mass. 1602 (1999).

shall be raised by the defendant in the original or amended motion. Any grounds not so raised are waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001). See Commonwealth v. Randolph, 438 Mass. 290, 294 (2002).

In any event, a reasonable jury could have inferred from the victim's testimony that the person to whom she referred as her mother, or "mom," and with whom she lived in Saugus and Billerica -- and specifically named in her essay as "Donna, . . . she is my mother," was in fact, the defendant.[9] "Proof of the identity of the person who committed the offense may be established in a number of ways and '[i]t is not necessary that any one witness should distinctly swear that the defendant was the [person], if the result of all the testimony, on comparison of all its details and particulars, should identify [the person]

---

[9] In addition, the criminal complaint lists the defendant's address in Saugus; the defendant herself testified that she lived in Saugus, in Billerica, then later back in Saugus. The victim testified that before living with her aunt, she "lived in Saugus with [her] mom"; Donna Hurley (the defendant's best friend) testified that she frequented, and sometimes stayed over, at the home of the defendant and the victim in Saugus. Compare Commonwealth v. Doe, 8 Mass. App. Ct. 297, 299-300 (1979) (indictments described the defendant as being an inhabitant of Hampden, and the daughters of the defendant testified that their home with the defendant had been in Hampden).

as the offender.'" Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010), quoting from Commonwealth v. Davila, 17 Mass. App. Ct. 511, 512 (1984).

Third, the defendant was not deprived of effective assistance of counsel. She raises this issue for the first time on appeal, presenting the "weakest form of such a challenge because it is bereft of any explanation by trial counsel for his [or her] actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Ramos, 66 Mass. App. Ct. 548, 552 (2006), quoting from Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). For that reason, we are unable to determine whether "defense counsel's asserted failures may in fact have been the considered product of a tactical decision," Commonwealth v. McCormick, 48 Mass. App. Ct. 106, 108 (1999), as the factual basis for this claim does not "appear[] indisputably on the trial record." Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), quoting from Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).

Moreover, there appears to have been no factual basis for the claim. By calling Detective Moynahan as a defense witness, counsel was able to impeach the victim and, arguably, cast some doubt on the Commonwealth's case, or at least on the detective's grasp of it. As we see no error in the admission of the prior course of conduct between the parties, any objection to the

uncharged bad acts would have been futile -- as would an argument that the identification of the defendant fell short. For all of these reasons, we cannot say that trial counsel's behavior fell "below that which might be expected from an ordinary fallible lawyer."  Commonwealth v. Lavoie, 464 Mass. 83, 89 (2013), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

Judgment affirmed.

Order denying motion for
new trial affirmed.[10]

---

[10] We allow the defendant's motion to strike pertaining only to those portions of the Commonwealth's supplemental record appendix (pages twenty-three through forty-nine) containing unredacted medical records not admitted at trial.

RUBIN, J. (concurring in the judgment).  Although I agree with the court's disposition of this case, I write to add a few words about the judge's remarks at the initial hearing where he was first confronted with the recantation by the defendant's daughter.

At trial, the defendant's daughter, a child in middle school, was the sole witness for the Commonwealth.  Based on her testimony, the defendant, a single mother with sole custody of the victim, the only parent who had always had the child in her care, was convicted of assault and battery.  Her sentence included a stay-away order allowing no contact with the child.  Fourteen days after the end of the trial, the child recanted the testimony that had led to her mother's conviction.

Although the majority's recitation of the facts creates the impression that the child recanted shortly after learning that she would be unable to contact her mother, in point of fact she had been removed from her mother's care the day after the assault, and had not seen nor, apparently, spoken with her mother for over a year prior to trial.

At the hearing on the defendant's motion for a new trial, the judge began by saying:

> "I can't tell you how offensive I find it that someone would put their hand up, swear to tell the truth, and then perjure themselves at the expense of someone they love. That is not something I walk away from.

"If I have remedies that I can punish I am likely to use them . . . .

"I'm going to step it back for a minute because I'm going to find out what my remedies are. I may not wait for the district attorney's office to take action . . . and I'm talking incarceration. . . .

"I want the Commonwealth -- actually I'm going to give everyone the weekend to think about this. I want the Commonwealth to find out what it perceives that my remedies are, and I'm going to do some research as to what I think my remedies are, but these aren't games we play."

The defendant argues for the first time on appeal that the judge's words created an appearance of partiality requiring sua sponte recusal because an outside observer might have thought the judge was attempting to get the witness not to recant in order to, as the defendant puts it, "protect the result of the trial over which he had presided."

Although I agree with the majority that the defendant has not met her burden of demonstrating even an appearance of partiality, I reach that conclusion by a somewhat different route. I agree with the majority that a judge may, in the judge's discretion, warn a witness when the judge perceives a risk of self-incrimination. See Taylor v. Commonwealth, 369 Mass. 183, 192 (1975). Indeed, it has been said to be "a 'commendable practice.'" Ibid., quoting from Commonwealth v. Slaney, 345 Mass. 135, 142 (1962).

But the judge's initial words were not the ideal way to warn this child that she might be exposing herself to

prosecution by the Commonwealth for perjury. This was a statement indicating that if the child recanted her testimony, the judge was likely sua sponte to order her incarcerated if he was empowered to do so, coupled with a request that one of the parties research what tools he himself had to order such incarceration, and a statement that the witness should take the weekend to think about whether she really wanted to recant.

Judges, of course, as a matter of law may not simply jail individuals for perjury. The determination whether to bring a prosecution for this crime is entrusted to the executive branch. See Commonwealth v. Cheney, 440 Mass. 568, 574 (2003). Nor may perjury, standing alone, be punished as a criminal contempt. See Miaskiewicz v. Commonwealth, 380 Mass. 153, 158 (1980). Nor have our appellate courts ever approved holding a juvenile in criminal contempt for anything but violation of a valid court order, see Doe v. Commonwealth, 396 Mass. 421, 423 (1985), let alone incarcerating them as adults, see ibid. (reserving the question of the propriety of such incarceration).

More measured language of warning thus would have been better suited to this situation. This was, after all, a recantation by a child, one found by a jury to be a victim of domestic violence. Her testimony led to her mother's conviction and to the child's own inability to have any contact with her mother. Although the judge's surprise, concern, and skepticism

certainly were understandable, more measured language would have been best.

Nor can the majority be correct that the mere fact that the child decided to go ahead and testify at the motion for a new trial despite the judge's remarks necessarily means there can have been no prejudice. See _ante_ at ___.[1] If the judge's statement revealed, as the defendant now claims, a desire to preserve the verdict notwithstanding the evidence -- and I emphasize that, as I spell out below, the judge's remarks do not indicate any such desire -- the child's decision to testify would not cure the error.

I therefore would not approve as appropriate words of warning the quoted portion of the judge's remarks. Nonetheless, as I said at the outset, I agree with the court majority that the defendant has not met her burden even to show error here, let alone a substantial risk of a miscarriage of justice.

As the court majority rightly notes, the record before us, read as a whole, shows not only that there was an absence of any objection or motion below based on the judge's words, itself a telling silence, but that at the end of the hearing the judge said, "I'm not trying to put a chill on anybody's testimony, but

---

[1] Nor could the fact that defense counsel used the circumstances the only way she could -- to argue that the child's perseverance demonstrated credibility -- undo any partiality or appearance of partiality on the part of the judge. See _ante_ at note 7.

I just want everyone to understand how seriously I take this," to which the child's counsel responded, "I understand, Judge. I'll talk to my client."

This evidence that the judge was attentive to the concern the defendant now expresses in her appeal, that he appropriately addressed it, and that his assurances were accepted by counsel for both the defendant and the child, who were present in the court room, and who were in a position to evaluate the judge's demeanor and the tenor of his remarks. The evidence in the record before us, read in context and as a whole, is thus inadequate to support the defendant's claim that the judge's remarks created even an appearance of partiality -- regardless of any problematic aspects of some of the judge's initial remarks. I therefore agree that the judgment should be affirmed. And I concur in the judgment of the court.[2]

---

[2] Although there is at least some strength to the defendant's ineffective assistance of counsel claim, I agree with the majority that ineffective assistance has not been shown indisputably on this record, and that the issue should be raised if at all in the first instance in a motion for a new trial. I would not go further, as the majority does, and opine on the propriety of calling Detective Moynihan as a defense witness.