Following a jury trial, the defendant, Levins Francois, was convicted of assault and battery by means of a dangerous weapon (bleach), in violation of G. L. c. 265, § 15A(b ). On appeal, the defendant contends that (1) there was insufficient evidence to support the conviction; (2) the defendant was prejudiced by inadmissible hearsay testimony for which no curative instruction was given; (3) the judge erred in not giving an eyewitness identification instruction; and (4) his counsel was ineffective for not requesting a curative or eyewitness jury instruction. We affirm.
Discussion. 1. Sufficiency of the evidence. We summarize the evidence presented at trial in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). Anushka Narcisse and the defendant had been in a dating relationship for several years. On the night of February 27, 2015, Narcisse was visiting the defendant at his house on Fuller Street in Dorchester. At around 10:00 P.M. , Robert Brown and Anthony Gonzalez[2] saw Narcisse running from Fuller Street onto Morton Street. Narcisse was screaming, crying, and asking for help. A six-feet tall, dark-skinned man, who wore dreadlocks, and who was carrying a bottle of bleach, chased her. Narcisse fell or was pushed and was then straddled by the man, who then poured bleach on her. After emptying the bottle of bleach, the man ran from the scene.
Narcisse testified pursuant to a court order. She claimed that she was intoxicated and did not remember what happened after she tripped while running to catch a bus. As Brown and Gonzalez approached Narcisse, there was a strong odor of bleach and her clothes were fading. She did not smell of alcohol and did not appear to be intoxicated. A nearby emergency medical technician, Caitlin Waibel, observed Narcisse running from a pursuer, who dumped something over her. As Waibel approached, Narcisse was distressed, smelled of bleach, and had minor burns on her body. According to Waibel's partner, Kenneth Arienti, Narcisse was crying uncontrollably, smelled of bleach, and her clothing was damp and discolored. Upon arriving at the scene, Officer Ismael Sosa also observed that the liquid on the ground smelled like bleach and that Narcisse smelled like bleach and did not smell of alcohol.
Eight months later, Brown was asked to identify the man he saw pour bleach on Narcisse. Detective Erin Schroeder showed Brown a photographic array (photo array) of nine to twelve individuals. She used specific parameters for the photo array; she selected individuals who had roughly the same age, height, and other characteristics as the defendant, including dreadlocks. Brown picked a photograph of someone other than the defendant. At trial Detective Schroeder testified that after the photo array Brown stated, "I don't really remember what [the perpetrator] looked like. I was more concentrating on [Narcisse] on the ground."
The defendant contends that the evidence was insufficient, because there was no eyewitness identification and the remaining evidence was purely speculative. "Proof of the identity of the person who committed the offense may be established in a number of ways and it is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010) (quotation omitted).[3]
Narcisse was dating the defendant when she visited him at his home on Fuller Street on the evening of the crime. Thereafter, multiple witnesses viewed Narcisse screaming frantically while being chased down Fuller Street-the street on which the defendant lived. The assault occurred on Morton Street, in close proximity to the defendant's house. Narcisse was chased by a six-feet tall, dark-skinned man with dreadlocks carrying a bottle of bleach. The fact that the perpetrator was carrying a bottle of bleach-an item commonly used and stored in the household rather than carried on the street-gives support to the inference that the pursuer took the bleach from a nearby home, chased Narcisse down the street, and poured it on her.
The physical description of the assailant matched the defendant's appearance. Notwithstanding the lack of an in-court identification, the jury were able to see the defendant in the court room and compare his appearance to the descriptions given by the witnesses. See Blackmer, supra. The inferences made were reasonable, not speculative.[4] See ibid. See also Commonwealth v. Jones, 477 Mass. 307, 316-318 (2017) (defendant's presence in area of crime, his lies to police evidencing consciousness of guilt, and similarity of his appearance with witnesses' descriptions was sufficient to identify defendant as shooter); Commonwealth v. Brennan, 74 Mass. App. Ct. 44, 48 (2009) (defendant identified as burglar based on circumstantial evidence including that defendant was in area at time crime occurred and had keys to burglary site). The judge correctly denied the defendant's motion for a required finding of not guilty.
2. Hearsay testimony. The defendant maintains that he was prejudiced by the following hearsay testimony by Officer Sosa.
PROSECUTOR : "And when you saw that liquid on the ground did you see anything on the woman that you were speaking with?"
OFFICER SOSA : "Yeah, the woman was apparently soiled; and I guess during the incident with her ex-boyfriend or boyfriend, whoever it was, the suspect it turned out to be later, it was relayed to us that he had poured bleach on her."
DEFENSE COUNSEL : "Objection."
THE COURT : "Okay. Objection sustained as to the statement that someone else made to the officer."
After the judge sustained the initial objection the defendant did not ask for a curative instruction or move to strike. The defendant claims that the judge erred in not giving a curative instruction sua sponte. Our review is limited to whether the judge erred, and if so, whether the error created a substantial risk of a miscarriage of justice. Cf. Commonwealth v. Murphy, 426 Mass. 395, 403 (1998) ; Commonwealth v. Marinho, 464 Mass. 115, 122 (2013).
The judge was not required to give a curative instruction in the absence of a request to do so. See Commonwealth v. Isabelle, 444 Mass. 416, 420 (2005). Furthermore, although Officer Sosa's answer that "it was relayed to us that [the defendant] had poured bleach on [Narcisse]" was hearsay, the adverse effect of the improper testimony was mitigated by the judge's jury instructions as a whole. The judge instructed the jury at the outset of trial and during his final jury instructions regarding the purpose of objections at trial.[5] Moreover, he informed the jury to "not consider any answer that [he] struck from the record and told [them] to disregard." Although the judge did not explicitly tell the jury to disregard Officer Sosa's answer, the judge immediately stated: "Objection sustained as to the statement that someone else made to the officer." The jury are presumed to have "[a] certain measure of ... sophistication." Commonwealth v. Kozec, 399 Mass. 514, 517 (1987).
The defendant also asserts error in Officer Sosa's testimony that Narcisse told him that bleach was poured on her. Officer Sosa's statement that "it must have been that bleach because that's what she was saying was poured on" was hearsay. Even if counsel's objection was sufficient to reach the challenged testimony, the testimony did not prejudice the defendant as it was cumulative of other properly admitted evidence.[6] See Commonwealth v. Wilson, 427 Mass. 336, 348 (1998).
3. Ineffective assistance. The defendant maintains that his counsel was ineffective when he failed to move to strike and request an instruction following Officer Sosa's hearsay testimony. To establish ineffective assistance of counsel, the defendant bears the burden of showing "that there has been a 'serious incompetency, inefficiency, or inattention of counsel-behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer,' and that counsel's poor performance 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " Commonwealth v. Millien, 474 Mass. 417, 429-430 (2016), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
The defendant "raises this issue for the first time on appeal, presenting the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his[, her, or their] actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Beaulieu, 90 Mass. App. Ct. 773, 781 (2016) (quotation omitted). Defense counsel could have concluded there was a risk that a curative instruction would draw further attention to Officer Sosa's statement. See Commonwealth v. Lao, 460 Mass. 12, 21 (2011). "For that reason, we are unable to determine whether defense counsel's asserted failures may in fact have been the considered product of a tactical decision," and the defendant has failed to establish that his counsel was ineffective. Beaulieu, supra (quotation omitted).
4. Jury instructions. For the first time on appeal the defendant contends that the judge erred by failing to instruct the jury sua sponte on eyewitness identification pursuant to Commonwealth v. Rodriguez, 378 Mass. 296, 310-311 (1979), S.C., 419 Mass. 1006 (1995), and its progeny.[7] In addition, he maintains that his counsel was ineffective for failing to request an eyewitness identification instruction. We review both claims for a substantial risk of a miscarriage of justice. See Commonwealth v. Navarro, 474 Mass. 247, 248-249 & n.1 (2016) ; Commonwealth v. Willard, 53 Mass. App. Ct. 650, 659-660 (2002).
The Commonwealth's evidence of identity was circumstantial. No eyewitness identification was made. The judge was not obligated to give a partial or modified instruction. See Commonwealth v. Johnson, 470 Mass. 389, 398 (2015). The witnesses testified to generic details about the defendant's height, race, and hairstyle that did not convey "details so specific to the defendant that they essentially serve as a partial eyewitness identification." Id. at 395 n.11.
The defendant also maintains that the judge should have given an eyewitness identification instruction because Brown failed to identify the defendant in a photo array. "Where there is no incriminating eyewitness identification testimony, a witness's failure to identify the defendant is not part of the jury's evaluation of identification evidence but simply exculpatory evidence indicating that the defendant was not the perpetrator, which the jury may weigh in light of the totality of the evidence." Johnson, supra at 396.[8] Even where requested, a "judge [does] not abuse his discretion by declining to give an identification instruction where there was no positive eyewitness identification or other eyewitness testimony that significantly incriminated the defendant." Id. at 398. For these same reasons, we see no basis for a claim of ineffective assistance of counsel.
Judgment affirmed.

Brown and Gonzalez were in a vehicle driving down Morton Street.

"Circumstantial evidence is competent to establish guilt beyond a reasonable doubt." Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 591 (2007) (quotation omitted). "While the inferences drawn must be reasonable, they 'need not be necessary or inescapable.' " Commonwealth v. Merry, 453 Mass. 653, 661 (2009), quoting from Commonwealth v. Grandison, 433 Mass. 135, 140-141 (2001).

The jury were also permitted to disbelieve Narcisse's testimony that she was drunk and could not remember what happened. In this domestic violence matter, that the loss of memory was grounded in fear was "a permissible inference" for the finder of fact. Commonwealth v. Fitzgerald, 376 Mass. 402, 413 (1978). Although disbelief of her testimony would not be enough, alone, to sustain the Commonwealth's burden of proof of identity, see Cahaly v. Benistar Property Exch. Trust Co., 451 Mass. 343, 352-358 & n.31 (2008), the jury were permitted to consider "the possibility that fear was the explanation" in evaluating the other evidence. Fitzgerald, supra.

He instructed the jury that "evidence consists of the testimony of witnesses ..., any documents or other things that were received into evidence as exhibits and any fact on which the lawyers have agreed or which I have told you that you may accept as proved," and that they were "to confine [their] deliberations to the evidence and nothing but the evidence."

Defense counsel objected to the officer's testimony that he assumed it was bleach, but counsel did not object to the officer's testimony that Narcisse told him it was bleach.

See Commonwealth v. Franklin, 465 Mass. 895, 910 n.24 (2013) ; Commonwealth v. Gomes, 470 Mass. 352, 379-388 (2015), S.C., 478 Mass. 1025 (2018).

Defense counsel focused on Brown's identification of another person in the opening statement and closing argument. An instruction which explained why misidentification occurs could have undercut the defendant's theory that the evidence was exculpatory. Whether to request such an instruction in these circumstances is a quintessentially strategic decision for counsel, not a unilateral action by the judge. See Commonwealth v. Norris, 462 Mass. 131, 144 (2012).